994 So.2d 1265 (2008)
James H. "Jim" BROWN, As Commissioner of Insurance for the State of Louisiana
v.
ANA INSURANCE GROUP, A Louisiana Partnership.
No. 2007-C-2116.
Supreme Court of Louisiana.
October 14, 2008.
Rehearing Denied November 21, 2008.
*1266 Adams & Reese, Donald Cole Massey, Raymond Peter Ward, New Orleans, for applicant.
The Law Office of Arthur A. Lemann, III & Associates, Arthur A. Lemann, III, New Orleans, Unglesby & Marionneaux, Lewis Owens Unglesby, Baton Rouge, for respondent.
JOHNSON, Justice.
We granted this writ application to consider whether the lower courts erred in finding that the Commissioner of Insurance breached his fiduciary duty in conjunction with his role as liquidator of an insolvent insurance company, and whether the lower courts erred in finding that the Commissioner was not entitled to immunity pursuant to La. R.S. 9:2798.1. Because we find that Barbara Presley does not have a right of action, we reverse the decision of the court of appeal.

FACTS AND PROCEDURAL HISTORY
In August 1990, Noel Bunol sold American National Agents Insurance Group ("ANA") for $50,000. The Act of Sale reflects that Barbara McDaniel and Morris Mahana purchased ANA as a partnership, with an 83 percent ownership interest to Barbara McDaniel and a 17 percent ownership interest to Morris Mahana.[1] Barbara McDaniel was the girlfriend, and later wife, of Sam Presley, Jr. Morris Mahana was a friend and employee of Sam Presley. Around the same time as the ANA sale, Sam Presley purchased two affiliated companies, namely United States General Agency ("USGA") and American Funding Services, Inc. ("AFSI"). Subsequent to his acquisition of the companies, ANA's business was operated by using USGA as a general agent and AFSI as a premium financer.
In 1992, the Louisiana Department of Insurance investigated ANA and determined that the partnership was insolvent and in violation of the minimum surplus requirements of the Louisiana Insurance Code. As a result of the Department's findings, the Commissioner of Insurance ("the Commissioner") instituted proceedings in the 19th Judicial District Court to place ANA in conservation on December 11, 1992. Shortly thereafter, on December 18, 1992, an order of rehabilitation was entered. ANA was eventually placed in liquidation on May 17, 1993.
On October 8, 1993, the district court rendered judgment, recognizing that USGA, AFSI, and ANA constituted a single business enterprise ("SBE").[2] The effect of the judgment was to merge the assets and liabilities of the affiliated companies into the ANA estate and, as such, *1267 the affiliated companies were likewise placed in liquidation.
Once the three companies were placed in liquidation, the Commissioner assumed the role of liquidator in accordance with certain provisions of the Louisiana Insurance Code, La. R.S. 22:732 et seq. In conjunction with the liquidation of ANA, USGA, and AFSI, the Commissioner received investment advice from Charles Reichman, who was under contract by the Commissioner to serve as investment funds manager for the receivership department of the Department of Insurance and the Louisiana Receivership Office. Reichman, in turn, negotiated a contract with Richard Bickerstaff of the investment firm of Hattier, Sanford & Reynoir ("Hattier") to manage investment portfolios for the receivership office on behalf of the Commissioner. At the time of liquidation, USGA held 50,000 shares of stock in Mobil Telecommunications Technologies Corporation ("M-Tel") and 100,000 units of a subordinate M-Tel debenture. Under the supervision of Reichman, the USGA securities were converted into common stock and sold through a programmed or staged sale over a twenty-month period of time between October 1993 and June 1995.
Subsequently, it was discovered that during the time the securities were being liquidated, Reichman and Bickerstaff were engaged in a criminal scheme involving the Department's investment funds. Under this scheme, Bickerstaff purchased securities in Hattier's name, marked up the price, and sold the same securities to the Department of Insurance's receivers at the marked-up price. Bickerstaff received 50% of all commissions that Hattier received pursuant to the trades. In addition, Bickerstaff also admitted that he owned a company named Asset Management Consultants, Inc. ("Asset Management") that also had a contract with the receivership office to "provide consulting expertise in investment portfolio management to all estates in the receivership department." Bickerstaff received $75.00 per hour for work performed under the contract, most of which entailed reviewing the investment activities of contracted investment firms, including Hattier. Asset Management received approximately $221,000 pursuant to its contract with the receivership office, of which Bickerstaff kicked back approximately $90,000 to Reichman. Reichman and Bickerstaff both pled guilty to state and federal offenses in connection with this scheme, and entered plea agreements which included restitution.
Sam Presley and Barbara McDaniel Presley were also implicated in separate criminal proceedings, and were charged by the federal government with conspiracy, RICO, mail fraud, and wire fraud in connection with ANA.[3] Sam Presley entered a plea agreement, in which he stated that the ownership and control of ANA rested solely with him. He also agreed to forfeit his interest in ANA and its affiliates as part of his plea agreement. In exchange for Sam Presley's admission and plea, the charges against Barbara Presley were dismissed.
The Commissioner filed a petition against Sam and Barbara Presley, together with Morris Mahana, alleging that they were indebted to the ANA estate to the extent of its insolvency as a result of their gross negligence, gross mismanagement, and fraudulent conduct. The Presleys reconvened, alleging that the Commissioner improperly placed ANA in liquidation and that he mismanaged ANA following its takeover.
*1268 The Commissioner responded to the Presleys' reconventional demand by filing various exceptions, including a peremptory exception of no right of action, contending that only the estate of ANA, and no private individual, had the right to bring an action for the mismanagement of the assets of ANA. The Commissioner also asserted the defense of statutory immunity pursuant to La. R.S. 9:2798.1. The trial court overruled the exception of no right of action and deferred ruling on the immunity defense pending trial on the merits.
The Commissioner filed a second exception of no right of action or, in the alternative, a motion to dismiss the Presleys' reconventional demand, asserting that Sam Presley had admitted in the federal criminal proceedings, that he, and not Barbara Presley, was the true owner of ANA. Additionally, the Commissioner averred that Sam Presley had forfeited all of his rights to ANA as a condition to his plea bargain in the federal proceedings. The Commissioner also filed a peremptory exception raising the objection of res judicata or, in the alternative, a motion to dismiss on the ground of collateral estoppel, based on admissions allegedly made by Sam Presley in the prior federal criminal case. The trial court overruled the exceptions of no right of action, res judicata, and estoppel. The court of appeal and this Court denied writs.[4]
The Commissioner subsequently filed a third-party petition against Hattier, Sanford & Reynoir, together with Bickerstaff and Reichman, individually, seeking indemnification. The Commissioner alleged that the staged sale of the USGA-owned M-Tel securities was defective and contrary to standard industry practices, in that the staged sale did not maximize proceeds to the Commissioner and/or the estate of ANA. The Commissioner additionally asserted that the staged sale was implemented so that Hattier, Sanford & Reynoir, together with Bickerstaff and Reichman, would be allowed to charge multiple and excessive commissions to the prejudice of the ANA estate and in violation of their fiduciary and contractual duties.
Eventually, all claims by each side against the other were dismissed or settled except the Presleys' reconventional demand against the Commissioner arising out of the sale of USGA-owned M-Tel securities.
Trial on the Reconventional Demand by Barbara Presley[5] commenced on November 5, 2003, at which time the Commissioner reasserted the exception of no right of action and a previous motion in limine, seeking to exclude the claims related to the sale of USGA-owned M-Tel securities. The trial court deferred rulings on both.
Following a trial on the merits, the trial court ruled in favor of Barbara Presley, denying the Commissioner's re-urged exception of no right of action, motion in limine, and motion to dismiss the reconventional demand based on statutory immunity. The trial court found that Bickerstaff and Reichman ("the investment managers") had been able "to operate with impunity" and that they had sold the USGA securities in a manner that permitted them to receive unjustified payments to the prejudice of the estate. The trial court also found that, under the doctrine of respondeat superior, damages were justified, noting that although Barbara Presley claimed a loss of $2,494,264, that entire amount was not due to the fraudulent conduct *1269 and substandard performance of the investment managers. Thus, the trial court awarded half of that sum, $1,247,132.00, in damages, along with interest.
The Commissioner appealed, and the court of appeal affirmed. The court of appeal reasoned that once the trial court recognized ANA, USGA, and AFSI as a single business enterprise, the assets of the individual companies were merged and vested in the Commissioner for appropriate management and distribution. Thus, in his role as liquidator, the Commissioner owed a fiduciary duty to all of the owners of the SBE who formerly held the assets. The court of appeal found that Barbara Presley, as an owner of ANA, acquired a right of action resulting from a breach of the fiduciary duty owed to any owner or member of the SBE who formerly held the assets. Thus, the court of appeal held that to the extent that Mrs. Presley was the owner of record of ANA, and USGA has been judicially recognized as an affiliated entity of ANA, she was, in her own right, a proper party to assert a claim against the Commissioner for breach of fiduciary duty arising out of the liquidation of the SBE companies and the mismanagement of the USGA-owned assets.
On the immunity issue, the court of appeal noted that although the Commissioner was vested with the authority to appoint agents pursuant to La. R.S. 22:743,[6] his duties as a fiduciary included oversight and supervision of those to whom the duty was delegated to ensure compliance with the law on liquidation. The court of appeal found that the record supported the trial court's finding that the Commissioner failed to supervise the investment advisers. The court of appeal further found that the Commissioner's failure to oversee the acts of its advisers was not an omission "reasonably related to the legitimate governmental objective" of the liquidation provisions of the Insurance Code. The court of appeal stated that the Commissioner's failure to oversee his advisers constituted reckless misconduct. Because the court found that the Commissioner's actions constituted "reckless misconduct," the court held that the Commissioner's malfeasance fell within the exceptions to the immunity provisions provided in La. R.S. 9:2798.1(C)(1) and (2), and he was not entitled to immunity for any damages arising out of the actions of his agents.[7]
On the merits of the reconventional demand, the court of appeal held that the Commissioner's fiduciary duty included *1270 supervision of investment advisors acting as its agents, and that the record supported the fact that the Commissioner failed to supervise his agents, who admittedly mishandled monies resulting in a substantial loss to the estate. As a result of the breach, the estate suffered loss of profits and paid excessive commissions arising out of the sale of the securities. The court of appeal concluded that the trial court did not err in ruling that the Commissioner breached his duty.[8]
This Court granted the Commissioner's writ application.[9]

DISCUSSION
Louisiana has a vital interest in the liquidation of insolvent insurance companies which operate in the State. Liquidation proceedings are designed to protect creditors, policyholders, and the general public by providing a comprehensive and efficient means for collecting an insolvent insurer's assets, and distributing those assets in a equitable manner to pay the claims of creditors. The Commissioner, as liquidator of an insolvent insurance company, administers the affairs of the insolvent company for the benefit of these creditors, policyholders and the general public. [See: Sherilyn Pastor, et al., Appleman on Insurance 2d § 162.1 (2005); Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 5:37 (2005) ].
We must first determine whether Barbara Presley, in any capacity, has a right of action arising out of the Commissioner's alleged breach of his fiduciary duty which resulted in a loss from the sale of the USGA-owned M-Tel securities.
The Commissioner argues that Barbara Presley has no claim, either individually, or as Sam Presley's succession representative. The Commissioner argues that Barbara Presley never owned ANA, and that her purported ownership was merely a sham set up by Sam Presley, as evidenced by the statements he made as part of his plea agreement in the federal criminal litigation. Further, the Commissioner argues that even if Barbara were the owner of ANA, the court's liquidation order would have divested her of that ownership interest. The Commissioner also points out that the M-Tel securities at issue were owned by USGA, not ANA, and that there is no dispute that Barbara Presley was never an owner of USGA. The Commissioner asserts that Barbara Presley does not have a right of action as Sam's succession representative because as part of Sam's plea bargain, he agreed to forfeit his interest in all of the SBE companies, including ANA and USGA. And, as Sam's *1271 succession representative, Barbara is bound by Sam's admission and forfeiture.
Barbara Presley argues that the record reflects that she was the owner of ANA. She points out that the Commissioner has alleged in pleadings that she is the owner, which constitutes a judicial confession. She asserts that she appeared in the lower court proceedings in three capacities: in her own right, as the owner of ANA; as succession representative on behalf of her deceased husband; and, eventually, as a derivative representative of the ANA estate.
Axiomatic under our system of law is that an action can only be brought by a person having a real and actual interest that he or she asserts. La. C.C.P. art. 681. The function of an exception of no right of action is to determine whether the plaintiff belongs to a class of persons to whom the law grants the cause of action asserted in the suit. La. C.C.P. art. 927(A);[10]Industrial Companies, Inc. v. Durbin, 02-0665, (La.1/28/03), 837 So.2d 1207, 1216. The no right of action exception assumes that the petition states a valid cause of action for some person. Industrial Companies, Inc. v. Durbin, 837 So.2d at 1216; Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La.11/30/94), 646 So.2d 885; Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 1095, 262 So.2d 328, 333 (1972). Evidence is admissible on the trial of an exception of no right of action to "support or controvert any of the objections pleaded, when the grounds therefor do not appear from the petition." La. C.C.P. art. 931.[11]

Right of action as owner of ANA
The only claim litigated in the trial court arose from the Commissioner's staged sale of the M-Tel securities. Those securities were owned by USGA, a company which was never owned by Barbara Presley. Barbara Presley's reconventional demand against the Commissioner was filed in her individual capacity, alleging that, as a beneficial owner of ANA, she incurred monetary losses as a result of the programmed sale of the USGA-owned M-Tel securities.
There is much dispute regarding whether Barbara Presley or Sam Presley was the actual owner of ANA. However, we need not decide which of the two had actual ownership of ANA in order to resolve this matter.
By law, once an order of liquidation is entered, the Commissioner takes possession of the property, business, and affairs of the insolvent insurer. La. R.S. 22:735(A).[12] The Commissioner is responsible for all of the assets that come into his *1272 possession, and is vested by operation of law with the title to all property of the insurer. Id. Once the trial court entered judgment declaring that USGA, AFSI and ANA constituted a single business enterprise,[13] the Commissioner, as liquidator, was vested with ownership of the property belonging to the SBE for purposes of the liquidation. La. R.S. 22:735; Green v. Champion Insurance Company, 577 So.2d 249 (La.App. 1st Cir.1991); [See also Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 5:38 (2005) ].
We hold that the court of appeal erred in holding that Barbara, as owner of ANA, acquired a right of action to sue for breach of a fiduciary duty owed to USGA. We find no authority for the proposition that Barbara's Presley's purported ownership interest in ANA was transformed into an ownership interest in USGA by virtue of the SBE designation. The nature and effect of the SBE judgment was simply to allow the Commissioner, as liquidator, to gather the assets of all of the SBE entities in order to use all of those assets to satisfy the claims of creditors. Thus, while the SBE judgment vested title to the assets of all of the SBE entities in the Commissioner for the purposes of the liquidation, it did not change ownership of each affiliated corporation making up the SBE, such that ownership in one entity became ownership in all the related entitles. The "single business enterprise" doctrine is essentially a theory for imposing liability where two or more business entities act as one. There was no confusion of ownership created by the SBE designation. We hold that any right to pursue a claim arising out the Commissioner's handling of the sale of the M-Tel securities would have to arise from an ownership interest in the company whose assets were sold, namely USGA.
Moreover, considering that title to all of the SBE companies, including ANA and USGA, was vested with the Commissioner once the order of liquidation was entered, Barbara would have been divested of any alleged ownership interest by the court's liquidation order.[14]

Right of Action as Sam Presley's Succession Representative
Setting aside the issue of whether, pursuant to La. R.S. 22:735(A), the liquidation order would have divested the owner of USGA of any ownership interest in that company, we will address the additional arguments presented on the right of action issue.
Barbara Presley amended her reconventional demand against the Commissioner to reflect that she was named as Sam Presley's succession representative. Because Sam Presley was the undisputed owner of USGA, the question now becomes whether Barbara, as Sam Presley's succession representative, has a right of action to pursue the claim for the loss realized by the sale of the M-Tel securities.
The Commissioner argues that Barbara Presley has no claim against him in her capacity as Sam Presley's succession representative. The Commissioner asserts that Sam pled guilty in connection with his *1273 operation of the ANA single-business enterprise, and as part of that plea bargain, he agreed to forfeit his interest in those companies. Thus, as Sam's succession representative, Barbara stands in Sam's shoes and is bound by Sam's admission and forfeiture.
Sam Presley's plea agreement provides in Paragraph 5:
The defendant hereby agrees to forfeit any right, title and interest to any assets or interest in assets, ... that were involved in, used in, intended for use in, or obtained through the racketeering activity to which he is pleading guilty....
(Emphasis added)[15]
The Factual Basis filed in the federal proceeding, which sets forth the government's evidence on which the plea agreement was based, makes clear that funds from ANA and USGA and CSG were involved in Presley's crimes. Both the plea agreement and the Factual Basis were signed by Sam Presley.
However, despite Sam's signed plea deal including the forfeiture agreement, and despite federal mandates that the Court order forfeiture in these circumstances,[16] no forfeiture order was entered. The lack of a forfeiture order was apparently due to the fact that ANA had been placed in receivership, and had no tangible assets to seize. The record contains the deposition of Peter G. Strasser, who was involved in Sam Presley's federal criminal case in his capacity as Chief of the Department of Justice's Organized Crime Strike Force assigned to the U.S. Attorney's Office for the Eastern District of Louisiana. Mr. Strasser's deposition provides the following testimony:
By Mr. Massey (Counsel for the Commissioner):
Q: One of the things in the Plea Agreement that I wanted to address was the forfeiture provision; and I'm going to flip you back, if I may, to Tab 7, Section 5.
Did Mr. Presley indicate that he would forfeit his interest or agreed to forfeit his interest in certain items?
Mr. Strasser:

*1274 A: That's what Paragraph 5 says, yes.
Q: At the time of this prosecution plea and sentence, had ANA Insurance Company been placed in Receivership by the Nineteenth Judicial District Court?
A: Yes.
Q: Did you have any understanding of whether there were any assets in ANA Insurance Company at that time?
A: It was my understanding based upon what was told to me by both Rick O'Bryan and by the FBI agent that there was no tangible assets upon which we could seize.
Q: Did you go about a perceived vain and useless effort of seizing assets that didn't exist, in your mind?
A: By the way you structured the question, the answer speaks for itself. No, we did not. There was nothing for us to forfeit. So therefore, at the point in time of sentencing or right before sentencing when we would normally do a forfeiture hearing, I did not call for forfeiture hearing, because there was nothing for me to forfeit.
Clearly, the reason that no forfeiture order was entered was because there was perceived to be no assets that would be subject to forfeiture. The government's position was that a forfeiture hearing was a vain and useless exercise. Thus, the lack of a forfeiture order is not determinative of this issue. Sam pled guilty to federal felony charges arising out of his operation of ANA and the related companies. Based on the facts and circumstances of this case, we can find no authority which would allow Sam Presley to bring an action against the Commissioner related to the sale of the M-Tel securities. As Sam's succession representative, Barbara Presley stands in Sam's shoes, and therefore Barbara cannot assert any right that Sam could not also assert. Thus, we hold that Barbara Presley is estopped from asserting a claim against the Commissioner as Sam's succession representative.

Right of Action as the ANA Estate representative
Barbara argues that the ANA estate, which consists of various creditors of the three SBE entities, effectively assigned its cause of action against the Commissioner to her in exchange for a percentage of her recovery on the reconventional demand. The Commissioner argues that there was no assignment of rights by the Estate.
The terms of the settlement were dictated into the record prior to trial of this matter.[17] The settlement provided that *1275 the ANA estate would be paid 1/3 of Barbara Presley's recovery on the reconventional demand, up to the sum of $1,000,000. Thereafter, the ANA estate is to receive 25% of the recovery after the payment of attorney fees and expenses, without limitation.
We find nothing in this settlement agreement that equates to an assignment of the Estate's cause of action. While, admittedly, the Estate stands to recover part of any judgment collected by Barbara Presley, this alone does not give Barbara Presley the right to maintain a cause of action against the Commissioner in this case.

CONCLUSION
We find that Barbara Presley does not fall within any of the particular classes to which the law grants a remedy for the harm she alleged in this case. Thus, we hold that Barbara Presley does not have a right of action against the Commissioner. Because we find that Barbara Presley does not have a right to bring an action for the monetary loss in the sale of the USGA-owned M-Tel securities, we need not reach the issues of the Commissioner's liability or immunity, since any discussion thereof would be pure dicta.

DECREE
For the foregoing reasons, we reverse the decision of the court of appeal. REVERSED AND RENDERED
VICTORY, J., concurs.
TRAYLOR, J., dissents and assigns reasons.
TRAYLOR, Justice, dissenting.
Because I believe that the results reached by the trial court and court of appeal on all of the issues raised in the trial on the reconventional demand were correct, I respectfully dissent.
NOTES
[1] On May 15, 1991, the partnership agreement was amended to reflect Mahana's transfer of 16.5% of his ownership interest in ANA to Barbara Presley, the actual sale having taken place on January 29, 1991.
[2] The "single business enterprise" doctrine is a theory for imposing liability where two or more business entities act as one. Generally, under the doctrine, when corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose. See: Green v. Champion Insurance Company, 577 So.2d 249 (La. App. 1st Cir. 1991); Brown v. Automotive Casualty Ins. Co., 644 So.2d 723 (La.App. 1st Cir. 1994).
[3] United States of America v. Sam Presley, II, Barbara McDaniel, Robert Barich, Morris Mahana & Noel Joseph Bunol, III, Case No, 95-368, United States District Court, Eastern District of Louisiana.
[4] See, Brown v. ANA Ins. Group, XXXX-XXXX (La.App. 1st Cir.4/17/03)(unpublished), writ denied, XXXX-XXXX (La.4/23/03), 842 So.2d 386.
[5] Prior to trial, Sam Presley died, and Barbara Presley was appointed to serve as the administrator of his succession.
[6] La. R.S. 22:743(A) provides, in pertinent part, that "the commissioner . . . shall have the power to appoint one or more special deputies as his agent or agents . . . and to employ such clerks, or assistants as may by him be deemed necessary, and to give each of such persons such powers to assist him as he may consider wise."
[7] The term "recklessness" has been equated with "gross negligence." State v. Ritchie, 590 So.2d 1139 (La. 1991). In Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, this Court set forth a definition of "gross negligence":

Gross negligence has been defined as the "want of even slight care and diligence" and the "want of that diligence which even careless men are accustomed to exercise." Gross negligence has also been termed the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." "There is often no clear distinction between such [willful, wanton, or reckless] conduct and `gross' negligence, and the two have tended to merge and take on the same meaning." Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence. (Internal citations removed).
[8] Judge McClendon dissented, finding that the Commissioner was entitled to immunity. Judge McClendon explained that the Commissioner's actions of hiring the investment advisers and accepting their advice to employ a programmed sale of securities from a liquidated SBE were discretionary acts within the course and scope of the Commissioner's duties. She noted that the record is devoid of evidence that the Commissioner had knowledge of any criminal activity by the advisers before their misdeeds were uncovered.

Judge Parro also dissented, finding that Barbara Presley did not have a right of action against the Commissioner. Judge Parro reasoned that the securities at issue belonged to USGA, of which Mrs. Presley did not have an ownership interest, nor did she acquire interest by virtue of the fact that USGA was part of a SBE that included ANA. Judge Parro noted that Mrs. Presley would have had a right of action for a share of the proceeds had she been a USGA policyholder or creditor. As a representative in her husband's succession, she would have had a right of action, but she failed to file in that capacity, only as an individual. Judge Parro concluded that Mrs. Presley, in her individual capacity, did not fall within any class to which the law grants a remedy for the harm she incurred.
[9] Brown v. ANA Insurance Group, 2007-2116 (La.2/22/08), 976 So.2d 1274.
[10] La. C.C.P. art. 927 A:

The objections which may be raised through the peremptory exception include but are not limited to the following:
(1) Prescription.
(2) Res judicata.
(3) Nonjoinder of a party under Articles 641 and 642.
(4) No cause of action.
(5) No right of action, or no interest in the plaintiff to institute the suit.
[11] La. C.C.P. art. 931 provides:

On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.
When the peremptory exception is pleaded in the trial court after the trial of the case, but prior to a submission for a decision, the plaintiff may introduce evidence in opposition thereto, but the defendant may introduce no evidence except to rebut that offered by plaintiff.
No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.
[12] La. R.S. 22:735(A) provides:

On the return of such order to show cause and after a full hearing, which shall be held by the court without delay, the court shall enter an order either dismissing the petition or finding that sufficient cause exists for rehabilitation or liquidation and directing the commissioner of insurance to take possession of the property, business, and affairs of such insurer and to rehabilitate or liquidate the same as the case may be. The commissioner of insurance shall be responsible on his official bond for all assets coming into his possession. The commissioner of insurance and his successor and successors in office shall be vested by operation of law with the title to all property, contracts, and rights of action of the insurer as of the date of the order directing rehabilitation or liquidation.
[13] The parties stipulated that USGA, AFSI and ANA constituted a single business enterprise, and the trial court entered judgment accordingly on October 8, 2003. This issue is not in dispute.
[14] La. R.S. 22:735(A)
[15] See: Commissioner Exhibit # 3, August 5, 1996 plea agreement.
[16] 18 U.S.C.A. § 1963 provides, in pertinent part:

(a) Whoever violates any provision of section 1962 of this chapter (RICO) shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both, and shall forfeit to the United States, irrespective of any provision of State law 
(1) any interest the person has acquired or maintained in violation of section 1962;
(2) any 
(A) interest in;
(B) security of;
(C) claim against; or
(D) property or contractual right of any kind affording a source of influence over;
any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
The court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection.
* * *
(Emphasis added)
18 U.S.C.A. § 982 provides, in pertinent part:
(a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.
(Emphasis added).
[17] The following colloquy occurred between the Court, attorneys for Barbara Presley (Mr. McGrew and Mr. Lemann), the attorney for the Commissioner/Receiver (Mr. Blunt) and Michael Adams (Receiver):

THE COURT: It's come to the attention of the Court that the parties hereto have reached stipulations dispositive of all issues as regards some of the parties; is that not correct?
MR. MCGREW: That is, in fact, correct, Your Honor.
THE COURT: Read your stipulation into the record, please, counsel.
MR. MCGREW: I have agreed with Mr. Blunt on behalf of my client, both in her individual capacity and her representative capacity, to accept the following offer in settlement of her claims by the Estate against them, being primarily that in regards to any recovery that we make against any claims we make as Plaintiff-in-reconvention, they are to be paid one-third of the recovery up to the amount of one million dollars. Thereafter, they are to receive twenty-five per cent of the recovery after the payment of attorney fees and expenses, without limitation.
Additionally the Estate has agreed to make the person of Ralph Gaubert available to us for interview and use at trial, as well as the other documents and records that are in the possession of the estate.
MR. LEMANN: And dismiss the case against them with prejudice.
MR. MCGREW: Thank you, Buddy, Dismissing their claims against my clients with prejudice.
THE COURT: Is that the sum and substance of the stipulation, counsel?
MR. BLUNT: Yes, Your Honor.
THE COURT: And I think it also it includes a provision by your Office of counsel, an attorney; is that not correct, Mr. Adams?
MR. ADAMS: Your Honor, Michael Adams. Any additional claims that remain in this estate, the Estate reserves the right to continue to pursue those claims which will include counsel intricately involved in that suit.