# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30863

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2016

Lyle W. Cayce
Clerk

ENERGY COAL S.P.A.,

Plaintiff-Appellant

v.

CITGO PETROLEUM CORPORATION,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before WIENER, CLEMENT, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

An Italian energy company contracted to provide various services in Venezuela for a subsidiary of the state-owned oil company Petróleos de Venezuela, which is called PDVSA. After it allegedly did not receive the $186 million owed under the contracts, the Italian company filed suit in Louisiana. Why did the Italian company file suit in a forum located many thousands of miles away from both where it is headquartered and where it performed the contracts? To try and take advantage of the single business enterprise theory under which Louisiana courts have allowed companies in certain

No. 15-30863

circumstances to be held liable for the acts of their affiliates. The entity named as a defendant was PDVSA's American affiliate, CITGO.

The plaintiff's case thus hinged on applying Louisiana law. But the district court held that the law of the state where CITGO is incorporated, Delaware, governs this attempt to disregard the corporate form. We agree with its analysis of this controlling choice-of-law question.

## I.

Energy Coal is an Italian company, based in Genoa. Its principal business is buying and selling fuel grade petroleum coke, which is a byproduct of oil refining.

Petróleo is a wholly-owned subsidiary of PDVSA. Both Petróleo and PDVSA were formed under Venezuelan law and are based in Caracas.

Energy Coal and Petróleo entered into a number of contracts that provided that Energy Coal would perform certain work and services in Venezuela relating to the construction and renovation of PDVSA facilities and the sale and transportation of petroleum coke. The contracts included a provision providing that any disputes would be resolved under Venezuelan law in a Venezuelan forum.

After Petróleo allegedly failed to pay for these services, Energy Coal filed suit in Louisiana state court seeking over $186 million in damages. Instead of naming Petróleo as the defendant, Energy Coal sued a nonparty to the contracts: CITGO Petroleum Corporation, a Delaware corporation with its headquarters in Houston. CITGO also operates a refinery in Lake Charles, Louisiana.[1] CITGO, like Petróleo, is a wholly-owned subsidiary of PDVSA.

---

[1] CITGO did not challenge personal jurisdiction, even though Louisiana is neither its principal place of business nor its state of incorporation. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (noting that although those locations are not the exclusive sources of general jurisdiction, they are the "paradigm all-purpose forums").

No. 15-30863

Energy Coal alleged that this relationship allows CITGO to be sued for Petróleo's actions under Louisiana's single business enterprise doctrine, which is a "theory for imposing liability where two or more business entities act as one." *Brown v. ANA Ins. Grp.*, 994 So. 2d 1265, 1272 (La. 2008).

CITGO removed the suit to federal court on the basis of diversity jurisdiction. It then filed a motion to dismiss, arguing that Delaware law determined if CITGO could be held liable for Petróleo's actions. The district court agreed that Delaware law governed and thus dismissed CITGO because Energy Coal did not allege any of the exceptional circumstances (like fraud, public wrong, or contravention of law) in which Delaware will disregard the corporate form.

## II.

We review choice-of-law questions de novo. *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 674 (5th Cir. 2000). Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry. *See Fortune v. Taylor Fortune Grp., LLC*, 620 F. App'x 246, 247–48 (5th Cir. 2015).

In diversity cases, the law of the forum state governs that inquiry. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Louisiana provides the following guidance:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse

3

No. 15-30863

consequences that might follow from subjecting a party to the law
of more than one state.[2]

LA. CIV. CODE ANN. art. 3515.

The analysis is thus issue-based so that the law of one state may govern one issue in the case and the law of a different state may govern another. That is what the district court held here. It concluded that Venezuelan law would govern the merits of the contract dispute in light of the choice-of-law clause in the contract between Energy Coal and Petróleo. CITGO is not a signatory to that agreement, however, so the law that governs its liability for Petróleo's breach is determined by the Code's general choice-of-law inquiry. *NorAm Drilling Co. v. E & PCo Int'l, LLC*, 131 So. 3d 926, 929–30 (La. App. 2 Cir. 2013) (conducting choice-of-law inquiry even though contract contained choice-of-law provision because defendant was not a party to the contract).

That inquiry requires us to first identify the state policies implicated in this conflict. We consider not only the policies underpinning the single business enterprise theory and alter-ego theories in Louisiana and Delaware, but those states' more general policies concerning disregard of the corporate form. LA. CIV. CODE ANN. art. 3515 cmt. c (explaining that courts should consider not only "policies embodied in the particular rules of law claimed to be applicable," but also the "more general policies" of each state).

The single business enterprise theory was first articulated by the Louisiana First Circuit Court of Appeals in the early 1990s in response to the well-publicized failure of a large insurance company with multiple affiliated sister companies. *Green v. Champion Ins. Co.*, 577 So. 2d 249, 251–53, 257–58 (La. App. 1 Cir. 1991). The court allowed the liquidator of the failed insurance company to reach its sister company's assets on the ground that separate

---

[2] This article considers many of the same factors listed in § 6 of the RESTATEMENT (SECOND) OF CONFLICTS (1971).

corporate existences could be disregarded when "corporations represent precisely the same single interest" or "a single corporation has been fragmented into branches that are separately incorporated and are managed by a dominant or parent entity, or have interlocking directorates."[3] *Id.* at 257. In the years following *Green*, the First Circuit took a more expansive view of the theory, particularly in cases of wholly-owned subsidiaries, in which it held that "[i]f one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter from liability." *Hamilton v. AAI Ventures, LLC*, 768 So. 2d 298, 302 (La. App. 1 Cir. 2000).

The Supreme Court of Louisiana has never adopted the single business enterprise theory. *See Brown*, 994 So. 2d at 1272 n.13 (declining to address validity of the single business enterprise doctrine because all parties stipulated it applied). Some have read its emphasis on the separate legal identities of parent and subsidiary corporations as inconsistent with the doctrine. *Bujol v. Entergy Servs., Inc.*, 922 So. 2d 1113, 1127 (La. 2004) ("The law has long been clear that a corporation is a legal entity distinct from its shareholders and the

---

[3] Framing the doctrine as a way to determine whether a corporation was an alter ego or instrumentality of a corporation, the *Green* court listed eighteen nonexhaustive factors to be used in this determination:

> corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; common directors or officers; unified administrative control of corporations whose business functions are similar or supplementary; directors and officers of one corporation act independently in the interest of that corporation; corporation financing another corporation; inadequate capitalization ("thin incorporation"); corporation causing the incorporation of another affiliated corporation; corporation paying the salaries and other expenses or losses of another corporation; receiving no business other than that given to it by its affiliated corporations; corporation using the property of another corporation as its own; noncompliance with corporate formalities; common employees; services rendered by the employees of one corporation on behalf of another corporation; common offices; centralized accounting; undocumented transfers of funds between corporations; unclear allocation of profits and losses between corporations; and excessive fragmentation of a single enterprise into separate corporations.

*Id.* at 257–58.

shareholders of a corporation . . . shall not be personally liable for any debt or liability of the corporation.  The same principle applies where one corporation wholly owns another." (citations omitted)), *adhered to on reh'g,* (La. 2006); *see also* 8 Glenn G. Morris, & Wendell H. Holmes, LOUISIANA CIVIL LAW TREATISE (BUSINESS ORGANIZATIONS) § 32.15 (2016) ("The reasoning in [*Bujol*] is inconsistent with the approach being taken in [single business enterprise] cases by some lower courts.  Those courts appear to believe that veil piercing between affiliated corporations poses a different, less serious departure from the principles of corporation law than does similar piercing to a human shareholder.  The Louisiana Supreme Court has indicated that the controlling principles are similar in both settings . . . ." (footnote omitted)).

This has contributed to a hodgepodge of views about the doctrine in lower Louisiana courts.  *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 786 (Bankr. W.D. La. 2013) ("[C]ourts outside of Louisiana's First Circuit have applied the single business enterprise doctrine in varying forms, although some commentators have criticized the broad scope of the doctrine and some courts have attempted to tether the doctrine to more traditional veil-piercing doctrines.").  The Second Circuit, for example, has retreated from its once expansive view of the theory and now characterizes it as requiring a showing similar to what piercing the corporate veil requires.  *Compare Town of Haynesville, Inc. v. Entergy Corp.*, 956 So. 2d 192, 197 (La. App. 2 Cir. 2007) (analyzing the single business enterprise theory as a form of piercing), *with Town of Haynesville, Inc. v. Entergy Corp.*, 840 So. 2d 597, 606–07 (La. App. 2 Cir. 2003) (affirming denial of summary judgment when single business enterprise theory was used to increase the amount of one company's contractual liability because of the separate contracts of a sister corporation); *see* Morris & Holmes, *supra*, at § 32.15 (calling the 2003 *Haynesville* decision

an "unprecedented use of the [single business enterprise] theory"). Likewise, Louisiana's Fourth Circuit has described it as an "equitable doctrine, similar to the piercing of the corporate veil." *Hopkins v. Howard*, 930 So. 2d 999, 1008 (La. App. 4 Cir. 2006). So too has Louisiana's Fifth Circuit. *Peyton Place, Condo. Assocs., Inc. v. Guastella*, 18 So. 3d 132, 149 (La. App. 5 Cir 2009). We have similarly described the single business enterprise theory as a "veil piercing theory . . . implemented to disregard the concept of corporate separateness when a juridical person is used to 'defeat public convenience, justify wrong, protect fraud, or defend crime.'" *In re Ark–La–Tex Timber Co.*, 482 F.3d 319, 335 (5th Cir. 2007) (quoting *Smith v. Cotton's Fleet Serv., Inc.*, 500 So. 2d 759, 762 (La. 1987)). This makes sense as both piercing the corporate veil and the single business entity doctrine disregard the corporate form in order to hold either shareholders in the former situation and affiliated companies in the latter liable for the debts of that corporation. Brock M. Degeyter, *Corporate and Business Law*, 52 LA. B.J. 115, 116 (2004).

Delaware has more steadfast policies on whether a corporation can be liable for its affiliate's conduct. It "respects corporate formalities, absent a basis for veil-piercing, recognizing that the wealth-generating potential of corporate and other limited liability entities would be stymied if it did otherwise." *Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009) ("This allows parents to engage in risky endeavors precisely because the parents can cabin the amount of risk they are undertaking by using distinct entities to carry out certain activities."). These general policies can give way in cases of alter-ego liability in which one corporation is acting as an instrumentality, or alter ego, of its parent. *Allied Capital Corp. v. GC–Sun Holdings, L.P.*, 910 A.2d 1020, 1044 n.62 (Del. Ch. 2006). But Delaware courts only disregard the corporate form in the

"exceptional case" where there is fraud or injustice through the misuse of the corporate form. *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010); *Case Fin., Inc. v. Alden*, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009).

Having identified the relevant policies, the next step is to evaluate the "strength and pertinence" of these policies by looking at each parties' relationship with the state and the factual or legal connection to the events giving rise to the dispute. LA. CIV. CODE ANN. art. 3515 & cmt. c ("A legislative policy that is strongly espoused by the enacting state for intra-state cases may in fact be attenuated in a particular multistate case that has only minimal contacts with that state. Similarly, the same policy may prove to be far less pertinent if the case has sufficient contacts with that state, but not contacts of the type that would actually implicate that policy.").

Neither Delaware nor Louisiana has significant connections to the events giving rise to this case. The contracts were not negotiated or performed in those states (or anywhere in this country). Energy Coal points out that it purchases \$40–\$50 million of petcoke in Louisiana each year, but does not allege that any of that petcoke has a connection to this dispute. It also cites CITGO's operation of a refinery in Louisiana, which requires it to possess a certificate of authority to do business in the state, but again does not allege any direct connection between that refinery and this dispute.[4]

---

[4] Although not alleged in its complaint, Energy Coal contends on appeal that CITGO's Louisiana refinery was ensured a source of petroleum coke from one of the Venezuelan plants that was a focus of a contract and that this shows a Louisiana connection. But Energy Coal acknowledges that it withdrew a motion to amend the complaint that would have added these allegations. We thus cannot consider the new allegations. *See Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotations and citations omitted). Even if we could, this attenuated connection between the performance of the contract and Louisiana would not change our conclusion that the state of incorporation governs whether CITGO can

Delaware's connection is that it is where CITGO incorporated. That single tie is an important one. In a previous assessment of Louisiana choice-of-law decisions, we concluded that "the law of the state of incorporation applies in determining whether it is appropriate to pierce the corporate veil." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 646–47 (5th Cir. 2002) (citing *Quickick, Inc. v. Quickick Int'l*, 304 So. 2d 402, 406 (La. App. 1st Cir. 1974) (agreeing with "the district court's determination that the Louisiana State Supreme Court would most likely conclude the law of the state of incorporation governs the determination when to pierce a corporate veil"). Louisiana courts look to the state of incorporation not just when deciding issues involving piercing, which as noted above is a close relative of the single business enterprise theory, but also when deciding more general questions of corporate structure. *Id.* at 647; *see, e.g.*, *S.F. Estates, S.A. v. Westfeldt Bros.*, 1998 WL 12243, at *4 (E.D. La. Jan. 13, 1998) (holding that the substantive law of a company's state of incorporation should be used to determine the viability of its corporate structure); *Powerup of Se. La. Inc. v. Powerup U.S.A., Inc.*, 1994 WL 543631, at *3 (E.D. La. Oct. 5, 1994) (same); *cf. Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1548 n.3 (5th Cir. 1985) (determining that the Supreme Court of Louisiana would apply the law of the state of incorporation to determine the viability of a corporation after dissolution).

One court has applied this principle that "Louisiana courts and courts applying Louisiana law apply the law of the place of incorporation to determine fundamental issues of corporate structure" in a single business enterprise case. *NorAm Drilling Co.*, 131 So. 3d at 930 (citing *Quickick,* 304 So. 2d at 406). In *NorAm*, a Texas plaintiff tried to hold a company liable for its affiliate's breach

---

be held liable for its affiliate's breach. *See NorAm Drilling Co.,* 131 So. 3d at 930 (applying Texas law even though contract was to be performed in Louisiana).

9

of a contract to drill a methane well in Louisiana. *Id.* at 927. Even though the Louisiana contacts were stronger in that case than here because it was where the contract was to be performed, the court still applied Texas law which does not recognize the single business enterprise theory. *Id.* at 930. Although *NorAm* involved the choice-of-law statute governing conventional obligations, it recognized that the specific conflict articles are derived from the general principles of article 3515 and went on to conclude under that general provision that "Texas law would be the most seriously impaired" if its law were not applied because it "has a strong interest in litigation deciding corporate structure of companies formed and existing under Texas law." *Id.* at 929–30.

That conclusion, to which we must defer under *Erie* on this question of state law, applies with equal if not greater force with respect to Delaware's interest here. Applying Louisiana law to hold a Delaware corporation responsible for its foreign affiliate's alleged breach of a contract in Venezuela would substantially undermine the high bar Delaware sets for disregarding corporate separateness. It would also be at odds with the expectations of the parties. Given the provision in its contract providing that Venezuelan law would govern any disputes, Energy Coal had no reasonable expectation that it could seek recourse under the laws of Louisiana. LA. CIV. CODE ANN. art. 3515 cmt. c ("All other factors being equal, the parties should not be subjected to the law of a state that they had no reason to anticipate would be applied to their case."). Energy Coal argues that CITGO's obtaining a certificate of authority to do business in Louisiana should have put it on notice that it could be subjected to single business enterprise liability. *But see NorAm Drilling Co.*, 131 So. 3d at 930 (rejecting application of Louisiana law even though defendant was authorized to do business in state). That would mean any corporation conducting business in Louisiana could be liable in the state's courts for the

10

No. 15-30863

conduct of an affiliate occurring anywhere in the world. No case law supports that astonishingly broad principle and the district court correctly recognized it could lead to rampant forum shopping, something the Louisiana choice-of-law principles aim to prevent. LA. CIV. CODE ANN. art. 3515 cmt. c.

We thus agree with the district court that Delaware law governs whether CITGO can be held liable for its affiliate's breach. As Energy Coal acknowledges that it cannot disregard the corporate form under Delaware law, the judgment is AFFIRMED.