714 So.2d 701 (1998)
John DOE and Mary Doe, Individually and on Behalf of the minor child, M.C. Doe
v.
John PARAUKA, Father Joseph Chotin, Our Lady of the Lake Parish, The Roman Catholic Church, Phillip M. Hannon, ABC Insurance Company and XYZ Insurance Company.
No. 97-C-2434.
Supreme Court of Louisiana.
July 8, 1998.
*702 Thomas Wilson Mull, Lorraine S. Mull, Frances M. Phares, Mull & Mull, Covington, for Applicant.
Thomas A. Rayer, Denechaud & Denechaud, New Orleans, for Respondent.
TRAYLOR, Justice.[*]
This case arises out of child abuse allegedly committed by John Parauka, principal of Our Lady of the Lake School. We granted writs to determine whether the trial court, as affirmed by the Court of Appeal, abused its discretion in rendering a directed verdict dismissing plaintiff's claim against the Archdiocese, finding that there was no basis whereby a reasonable juror could have found that an employer-employee relationship existed between the Archdiocese and Parauka.
Because we find that there exists sufficient evidence from which a reasonable juror could find that Parauka was the Archdiocese's employee, we hold that the trial court abused its discretion in granting a directed verdict in favor of the Archdiocese.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, John and Mary Doe, individually and on behalf of their minor child, M.C. Doe, filed suit alleging that between September 1986 and February 1987, M.C., while attending kindergarten at Our Lady of the Lake School, was sexually abused by John Parauka, the principal of the school. Along with Parauka, plaintiffs named as defendants the Archdiocese of New Orleans, Our Lady of the Lake School (OLOL), and Father Chotin, pastor of OLOL.[1] At the close of plaintiffs' case, the trial court granted a directed verdict in favor of the Archdiocese, OLOL, and Father Chotin, dismissing plaintiff's claims *703 against them. On application for supervisory writs, the Court of Appeal vacated the trial court's judgment as to Father Chotin and OLOL and remanded for further proceedings. Subsequently, the trial judge declared a mistrial when a juror was arrested and all alternates had been excused. The plaintiffs then appealed from the directed verdict in favor of the Archdiocese.
A three-judge panel of the Court of Appeal affirmed the trial court's grant of a directed verdict.[2] The Court of Appeal first determined that the plaintiffs' petition and the defendant's answer, along with record evidence, established that the Archdiocese and OLOL are "separate and distinct legal corporations." The court then found, based upon the testimony of Howard Jenkins, Superintendent of Catholic Schools for the Archdiocese, that Parauka's employer was OLOL, and thus, the Archdiocese, as a separate and distinct corporation, could not also be Parauka's employer. Therefore, the Court of Appeal held that no reasonable juror could conclude that there existed an employer-employee relationship between the Archdiocese and Parauka. As the employment relationship is one of two required elements for vicarious liability, La. Civ.Code art. 2320; Orgeron, on Behalf of Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226,[3] the court found that the plaintiffs' claim under vicarious liability must fail. The court then concluded that absent the employment relationship for the purposes of vicarious liability, the plaintiffs' claims against the Archdiocese under the remaining theories of negligent hiring, supervision, and retention likewise could not be maintained. Thus, the court found that the directed verdict was proper.

DISCUSSION
A directed verdict is properly granted only "when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict." Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La. 1986); Bergeron v. Blake Drilling & Workover Co., 599 So.2d 827 (La.App. 1st Cir.), writ denied, 605 So.2d 1119 (La.1992). Here, the Court of Appeal affirmed based on the lack of an employer-employee relationship between the Archdiocese and Parauka, which necessarily extinguished plaintiffs' vicarious liability claim. Therefore, the only issue before this Court is whether there is sufficient evidence in the record from which a reasonable juror could have concluded that there did exist an employer-employee relationship between the Archdiocese and Parauka. The purpose of our review is not to determine whether there actually existed an employment relationship between the Archdiocese and Parauka, but whether a reasonable juror could have concluded as much.
Initially, we address the Court of Appeal's finding that OLOL and the Archdiocese are separate and distinct corporations. The plaintiffs' petition and the defendants' answer do not establish that OLOL and the Archdiocese are separate and distinct as found by the Court of Appeal and argued by the Archdiocese. Rather, the plaintiffs' Petition For Damages alleges in two sequential paragraphs:
3.
Made defendant herein is OUR LADY OF THE LAKE PARISH, which based upon information and belief, at all times pertinent herein, was an unincorporated association and/or incorporated association doing business in the State of Louisiana.
4.
Made defendant herein is THE ROMAN CATHOLIC CHURCH for the Archdiocese of New Orleans, which based upon information and belief, at all times pertinent herein, was an unincorporated association and/or an incorporated association doing business throughout the State of *704 Louisiana, through its Archdiocese, various Dioceses, and church parishes.
Defendants Chotin, OLOL, the Archdiocese, and the Archbishop filed their Answer which responded in pertinent part:
3.
Defendants admit that The Congregation of Our Lady of the Lake Roman Catholic Church is a Louisiana non-profit corporation domiciled in the Parish of St. Tammany.
4.
Defendants admit that The Roman Catholic Church of the Archdiocese of New Orleans is a Louisiana non-profit corporation domiciled in the Parish of Orleans, but deny the remaining allegations of Paragraph 4.
Contrary to the Court of Appeal's conclusion that the above establishes that OLOL and the Archdiocese are separate and distinct legal entities, we find that, at most, the petition and answer put the matter in dispute. The petition makes no statement that could be interpreted to support that the two are separate. The petition in Paragraph 4 states that the Archdiocese was "doing business throughout the State of Louisiana, through its Archdiocese, various Dioceses, and church parishes." This alleges a hierarchical relationship with the Parish subordinate to the Archdiocese. The defendants' answer, which denies this portion of Paragraph 4, can only serve to place the issue in dispute. This, of course, does not establish that the two are separate and distinct. Additionally, there is nothing in the record to support such a proposition. However, there is support that the relationship was indeed hierarchical. Superintendent Jenkins, as agent and representative of the Archdiocese, testified that along with several other parishes, OLOL was within the jurisdiction of the Archdiocese. Jenkins specifically testified that Our Lady of the Lake School was within the authority and jurisdiction of the Archdiocese. Jenkins testified that he, as the Archdiocese's superintendent, supervised and exercised authority over the schools within the Archdiocese. The Archdiocese is involved in the hiring process of school officials, including the hiring of Parauka in the instant case. Jenkins also testified that while the local parish priest exercises direct control over the parish's school principal as his immediate employer, the Archbishop is his "ultimate employer."
In view of the above testimony and the actual allegations within the petition, we find that the contention that the Archdiocese and OLOL are separate and distinct is without support in the record. Therefore, the Court of Appeal's conclusion that Parauka could not be the employee of the Archdiocese because he was the employee of a separate and distinct OLOL cannot stand.
Given that the defendant did not establish that OLOL and the Archdiocese are separate and distinct, and that it is entirely possible for Parauka to be the employee of the Archdiocese, as well as OLOL,[4] the remaining question is whether there is sufficient evidence within the record from which a reasonable juror could determine that Parauka was the employee of the Archdiocese. If so, the directed verdict in favor of the Archdiocese was improper. Hastings v. Baton Rouge Gen. Hosp., 498 So.2d at 713.
"The single, most important factor to consider in deciding whether the employer-employee relationship exists for the purposes of art. 2320 is the right of the employer to control the work of the employee." Roberts v. State Through La. Health and Human Resources Admin., 404 So.2d 1221, 1225 (La.1981). The right of control necessarily encompasses supervision, selection and engagement, payment of wages or salary, and the power to dismiss. Walker v. Kroop, 96-0618 (La.App. 4th Cir. 7/24/96), 678 So.2d 580.
*705 In order to find sufficient evidence from which a reasonable juror could conclude that Parauka was the employee of the Archdiocese, we need look no further than the testimony of the Archdiocese's own agent and representative, Howard Jenkins, Superintendent of Catholic Schools for the Archdiocese.[5] Jenkins' testimony is replete with evidence that Parauka could have been the employee of the Archdiocese as well as of OLOL.
As previously discussed, Jenkins testified that OLOL was within the authority and jurisdiction of the Archdiocese and that he, as the Archdiocese's superintendent, supervised and exercised authority over the schools, and thus the principals, within the Archdiocese. Jenkins testified that the Archdiocese allowed the local parishes a great deal of autonomy and that the principals were responsible to the parish priests. However, the record also establishes a hierarchy of control with the parish priests responsible to the Archdiocese. Additionally, the Archdiocese published guidelines and implemented policies which the principals were bound to follow. Jenkins testified that on at least two occasions, he had exercised power on behalf of the Archdiocese to resolve local problems. He also stated that supervision of OLOL was within the scope of his duties as the Archdiocese's superintendent. Regarding Parauka specifically, Jenkins testified that while the local parish priest exercised direct control over Parauka as his immediate employer, the Archbishop was his "ultimate employer."
As to selection and engagement, the record reveals that the Archdiocese is involved in the hiring process of school principals, including Parauka. A staff member from the Archdiocese and the parish priest chose the selection committee. The committee, which screened the applicants for interview and then conducted the interviews, was composed of the OLOL school board, Father Chotin, and a staff member from the Archdiocese. The committee recommended hiring Parauka. Significantly, Jenkins co-signed Parauka's employment contract. Although Jenkins testified that Father Chotin made the final hiring decision, Jenkins' testimony clearly shows that Parauka would not have been hired without the Archdiocese's consent. The Archdiocese conceded as much during argument before this Court.
Concerning the power of dismissal, according to Jenkins' testimony, the Archdiocese had the power to dismiss Parauka and it was on the final authority of the Archbishop that Parauka was finally suspended.
Although OLOL, and not the Archdiocese, paid Parauka's salary, given the amount of evidence supporting an employment relationship, this is insufficient to amount to evidence so strongly against an employment relationship that reasonable people could not reach a contrary verdict. The Archdiocese exercised a discernable degree of supervision and control, an important factor in analyzing employment relationships. The Archdiocese was also involved in the hiring and the dismissal of Parauka.
Therefore, we find that there is sufficient evidence in the record from which a reasonable juror could have concluded that there did exist an employer-employee relationship between the Archdiocese and Parauka. Therefore, the issue should have gone to the jury and the directed verdict in favor of the Archdiocese was improperly granted.

DECREE
For the foregoing reasons, we find that the lower courts erred in granting and affirming the directed verdict in favor of the Archdiocese of New Orleans. Therefore, we reverse.
REVERSED.
NOTES
[*] Calogero, C.J., not on panel. Rule IV, Part 2, § 3.
[1] Plaintiffs also named Archbishop Hannan of the Archdiocese of New Orleans but later voluntarily dismissed their claims against him upon his retirement.
[2] The Court of Appeal affirmed the directed verdict with one concurrence and one dissent.
[3] The remaining element is that the employee must have been acting within the course and scope of his employment at the time that he committed the tortious act. Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 996.
[4] The Court of Appeal has already determined that OLOL was Parauka's employer and we find no reason to disturb that finding. An individual may simultaneously be the employee of more than one employer for the purposes of vicarious liability under La. Civ.Code art. 2320. See, e.g., Morgan v. ABC Mfr., et al., 97-0956 (La.5/1/98), 710 So.2d 1077.
[5] It is a basic tenet of corporate law that as a legal fiction, a corporation only acts through its officers, employees, and other agents.