PITMAN, J.
11 Plaintiff,- Irene K. Che, individually and on behalf of her minor daughter, Messoma S. Ejezie, appeals the trial court’s granting of motions for summary judgment in favor of Defendants, the Louisiana District Council of the Assemblies of God (“the DC”) and the General Council of the Assemblies of God (the “GC”). For the following reasons, we affirm.

FACTS

On December 19, 2013, Ms. Che and her 22-month-old daughter attended a celebration at First Assembly of God Church (“First Assembly”) in Ruston, Louisiana. At some point during the celebration, her daughter was found- submerged in the baptismal pool of the church. The child suffered a severe .brain injury that has left her unable to walk, talk or feed ■ herself.
*129 Ms. Che, individually and on behalf, of her daughter, filed suit against First Assembly, the specific church where the injury occurred, the DC and the GC, alleging that First Assembly was liable to her for damages due to its negligence in failing to guard the baptismal pool in any way and leaving the pool full of water. The pool is four feet deep. There are no doors or other barriers separating the. pool. from the general premises of the church and no cover over the pool or any other safety features.
Plaintiffs actions against the DC and the GC are based on respondeat superior, Defendants’ respective liability as members of a single business enterprise and as members of an unincorporated , association with its own legal personality. The DC and the GC each, filed motions for. summary judgment seeking dismissal of Plaintiffs claims on the basis that neither 12had any responsibility for the employment of the pastor at First Assembly, nor was there any master-servant, employer-employee relationship between them and First Assembly sufficient to impose upon them any liability for the actibns of First Assembly set forth in Plaintiffs petition. They each claimed that no genuine issues of material fact remain regarding their lack of supervision, governance or control over the co-defendant, First Assembly. Further, each argued that Plaintiff would be unable to provide proof that a master-servant or employer-employee relationship existed between- them and First Assembly; and, therefore, they were entitled to judgment as a matter of law.
In support of their motions for summary judgment, the movers filed the affidavit of Richard Hammar, General Legal Counsel for the GC, who attested that he had attached a true and complete copy of the Constitution (“the Constitution”) and the By-laws (“the By-laws”) of the GC,-which show that the DC and the GC are separate and distinct business entities, from the local church. Specifically, Article XI, Section 1(c) of the Constitution, regarding local assemblies, states as follows:
c. Right of self-government (sovereign fights). Each General Council affiliated assembly has the right of self-government under Jesus Christ, its living Head, and shall have the power to choose br call its‘pastor, elect its official board, and transact all other business pertaining to its life as a local unit. It shall have the right to administer discipline to its members according to the Scriptures and-its constitution or bylaws. It shall have the right to acquire and hold -title to property, either through; trustees or -in its corporate name as a-self-governing unit. The fact it is affiliated with The- General Council of the Assemblies of God shall in no way destroy its rights as above stated or interfere with its sovereignty. The Isgovernance model adopted by the local assembly shall conform to the guidelines of Constitution, Article XI, Section 1, paragraph a, subparagraph (4).
Paragraph (d) of that- section states as follows:
d. Subordinate in matters of doctrine and conduct.' A General Council affiliated assembly shall recognize that a district council or The General Council of the Assemblies of God has the right to approve scriptural doctrine and conduct and to disapprove unscriptural doctrine and conduct and the authority to withdraw its Certificate of Affiliation if deemed necessary. (See Article VI, Section 4, of the By-laws.)
Article VI, Section 4 of the By-laws concerns the relationships between churches, district councils and the general council and states in section (a) as follows:
*130 a. -Nature. General Council affiliated churches are deemed to be sovereign, autonomous, self-governing, and self-determining bodies; which have, by their sovereign, self-determining action in making application for and receiving .recognition as a General Council affiliated church, entered into an agreement with the Fellowship to be amenable to the General Council and district council in. matters of doctrine and conduct. (See Constitution, Article XI, Section 1, paragraph d.)
Mr. Hammar’s affidavit explains how the different churches within the Assemblies of God are affiliated, that- they are congregational in polity and that the Assemblies is a cooperative fellowship of independent and autonomous churches that have plenary control over their own properties. The affidavit states that the GC has no authority to require churches to comply with any risk management recommendations as a result of polity and that the GC lacks authority to supervise or control church property. ■ - -
The depositions of several church personnel were also submitted with the motions for summary judgment, including those of Dr. George Wood, superintendent of the GC from Missouri; Pastor Douglas Fulenwider, |4 superintendent of the DC from 1994 until 2014; and Pastor Ricky Bonnett of First Assembly. Their deposition testimony established how the Assemblies of God was created, how individual churches join the fellowship, what the teachings of the church entail and that baptism by immersion is required, but that neither the GC nor the DC controls the setting for baptisms by immersion, which can be done anywhere the local pastor chooses. The GC and the DC have no ownership of the property '■ of the local churches. Testimony was also given that each church has the right to hire its own pastor, and the only control asserted over the local churches by the GC or the DC concerns doctrine or behavior of a pastor who strays from the teachings, of the church.
The trial court jointly addressed the two motions for summary judgment and rendered judgment granting each motion and dismissing the Plaintiffs actions ágairist the DC and'the GC. In its reasons for judgment, it stated'that somie of the pertinent information found in the affidavits, depositions, Constitution and By-laws included the following:
• The General & District' Council have never had a master-servant or employment relationship with the local church or anyone employed by them.
• There is no relationship between General Council, District Council and the local church entities other than on matters of religious doctrine.'
• General and District Council never had any ownership, custody or control of the local church.
• All of the defendants are separately " incorporated with their own officers and directors and with no common officers or directors. They are all insured separately.
• Each defendant oversees its own finances and hires its own employees free of any control from the other.
• The baptistery involved in this accident along with the building and land containing it was owned solely by defendant First Assembly of God of Ru-sten, La.
⅛¶* The Constitution, and Bylaws show that the' local churches have plenary control of their property..
• That General and District Council have never been involved in any jointly financed business venture with the local church. ■ •
*131 • The General and District Council recognize the sovereign and self governing status ■ of affiliated churches including the right to acquire, use and maintain property exclusively.
The trial court’s reasons also stated that Plaintiff had presented no evidence to controvert Defendants’ evidence or which would indicate that Defendants controlled the daily secular or financial affairs of the local church. Absent such evidence, it stated that there was no authority for imposing vicarious liability. It also found that the affidavits, the Constitution and the By-laws were replete with references to the sovereign and autonomous nature of affiliated churches and noted'that the single-business-enterprise doctrine was a theory for imposing liability where two or more business entities act as one. When corporations integrate:- their resources in operations to achieve a eommon business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose. After addressing the issue, the trial court found that the main focus of the relationship between the DO and the GC and First Assembly was doctrinal in nature and found nothing to indicate that the two councils were responsible for maintaining the individual church’s property. Plaintiff appeals the granting of the motions for summary judgment.

DISCUSSION

Plaintiff argues that the trial court erred in ruling there was no genuine issue of material fact regarding the alleged liability of either the DC [fior the GC under the doctrine of respondeat superior. She contends that First Assembly is part of the Assemblies of God denomination by virtue of a contractual relationship with its governing body, the GC. She points out that, in the hierarchy of the Assemblies of God denomination, the DC falls between churches such as First Assembly and the GC. She argues that district councils are created in accordance with the Constitution and the By-laws, which control the interrelationships, between and among it, the local churches and district councils and that, pursuant to the C.onstitution and the By-laws, .the local churches submit themselves to. the .authority and control of both the DC and the GC by agreeing to be amenable to those councils in “matters of doctrine and conduct.”.
Plaintiff further argues that'the councils have input as to license and ordination of pastors, standards of conduct, education and testing of those who desire to be a pastor and discipline of pastors as a result of personal conduct.: She points out that, in order for a local church to become a member of the-Assemblies of-God, the local church must adopt the articles of incorporation and a constitution or by-laws compatible with models recommended by the DC and the GC.-
Plaintiff' also claims that the action against First Assembly and its pastor is one of negligence in failing to maintain the baptismal pool in a reasonably safe manner. She' asserts that the action against the remaining Defendants was one of re-spondeat • superior, under La. C.C. art. 2320, which makes masters and employers answerable for the damage occasioned by their servants-and employees in the' exercise of the functions in which they [7are employed. She argues''that the important factor in deciding whether respondeat superior applies is the right the master or employer has to control its servant or' employee. She-.-contends that .this was the only theory of liability that the DC and the GC addressed in their motions for summary judgment, while she points out that she also argued that .the -DC and the GC could be liable to her under the single-business-enterprise- theory of recovery- or *132 as members of an unincorporated association with its own juridical personality.
Plaintiff further argues that the trial court should not have allowed affiliated corporations to escape liability simply because of business fragmentation when they are inescapably intertwined in their common purpose. She contends that there is significant’ evidence upon which a jury could find that First Assembly, the DC and the GC were part of a single-business enterprise and that, therefore, genuine issues of material fact remain ,which would preclude summary judgment in their favor.
■ Plaintiff also argues that, although she asserted a claim against the DC and the GC as members of an unincorporated association, the trial court failed ■ to- address this cause of action when it granted the motions for summary judgment. • - Under ;this theory of liability, she asserts that an unincorporated association is created by a contract in which several persons act in common and in case of need, revenue or capital with a purpose .other than to share the benefits. The .contract permits the attainment of a purpose or the exercise of influence, which, for individual persons acting alone, would be more difficult or even impossible. She contends that the local ^assembly, the. DC and the GC are all governed by,the same interrelated constitutions, and, by-laws and . have, i. common members. For these reasons, she argues there are at least genuine issues of material fact as to the issue of whether an -unincorporated. association exists ,between them.
Both the- DC and the GC argue that they never had ownership, custody or legal control of the premises at issue in the suit or any right to control the time or physical activities of any employee of the premises owner. Further, they were never involved in a single business enterprise with the First Assembly, or'with that entirely separate corporation’s-pastor. They each argue that they have not been involved in an unincorporated association with First Assembly which has, at all relevant times, had sole- ownership and custody of the premises at issue, as well,as sole actual and legal control of its employees in charge of that premises.
The DC and the GC argue that, since they will not bear the burden of proof at .trial, it^ was only necessary for • the trial court to recognize as a .matter of law that Plaintiff did not have‘factual support for one or more elements of the various claims asserted. They claim that, no matter how many theories of liability Plaintiff asserts, there is an absence of factual support for one or more elements essential to her claims. Because she was unable to provide evidence to establish an employer— employee relationship or master — servant relationship, between First Assembly and the DC or the GC, the DC and the GC did not have any control over what occurred at .the church and could not have prevented the accident.from occurring. -Neither the :DC nor the GC exercises any control over First Assembly, other than Rdoctrinal authority and’personal conduct- of Assembly of God ministers; they have no control over First Assembly’s property, finances or hiring of ’ employees. They, therefore, -assert that they cannot be held liable for the negligence of First Assembly in this suit. For these reasons, they argue that the trial court correctly granted the motions for summary judgment.
A de novo standard of review is applied in considering lower court rulings on summary judgment motions. Appellate courts use the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. • A court must grant a mótion for summary judgment if the pleadings, depositions, answers to interrogatories and admissions, together *133 with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled.to judgment as a matter of law, pursuant to La. C.C.P. art. 966(B). On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of -the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. La. C.C.P. art. 966(C)(2); Mahoney v. E. Carroll Par. Police Jury, 47,494 (La.App.2d Cir.9/26/12), 105 So.3d 144, writ denied, 12-2684 (La.2/8/13), 108 So.3d 88.
|1flA fact is material for summary judgment purposes if its existence or nonexistence may be essential to the plaintiff’s cause of action under the applicable theory of recovery. Walters v. City of W. Monroe, 49,502 (La.App.2d Cir.2/4/15), 162 So.3d 419, writ denied, 15-0440 (La.5/15/15), 170 So.3d 161.

Master-Servant liability

La. C.C. art. 2317 states that we are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. That rule is understood to be modified by La. C.C. art. 2320, which states that masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions-in which they are employed. Responsibility only attaches when the masters or employers might have prevented the act which caused the damage and have not done it.
A servant is a person employed to perform services in the affairs of another and who, with respect to the physical conduct in the performance of the services, is subject to the other’s control or right to control. The word servant includes anyone who performs continuous service for anothér and whose physical movements are subject to the control or right to control of the other as to the manner of performing the service. Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990).
The single, most important factor to, consider in deciding whether the employer-employee relationship exists for the purposes of article 2320 is. Lithe right of the employer, to control the work of the employee. Doe v. Parauka, 97-2434 (La.7/8/98), 714 So.2d 701, citing Roberts v. State, Through La. Health and Human Res. Admin., 404 So.2d 1221 (La.1981). The right of control necessarily encompasses supervision, selection and engagement, payment of wages or salary and the power to dismiss, Id., citing Walker v. Kroop, 96-0618 (La.App. 4th Cir.7/24/96), 678 So.2d 580.
In LeCroy v. Interim Health Care Staffing of N. Louisiana, Inc., 43,080 (La.App.2d Cir.4/2/08), 980 So.2d 838, this court stated’'that, under the doctrine of respondeat' superior, employers are responsible for the torts of their’ employees committed during the course and scope of employment. In régard tó the issue of whether the master-servant relationship exists, and whether, the master has the right to control, it is not the supervision and control actually exercised that is significant; the important question is whether, from the nature of the 'relationship, the right to do so exists; Id., citing Ledent v. Guar. Nat. Ins. Co., 31,346 (La.App.2d *134 Cir.12/28/98), 723 So.2d 531; Slaughter v. Georgia Cas. & Sur. Co., 415 So.2d 312 (La.App. 2d Cir.1982), writ denied, 420 So.2d 979 (La.1982).
A de novo review of this record indicates that the GC and the DC had no right under the Constitution and By-laws to control the property of First. Assembly, or to dictate what actions were taken on a day-to-day basis at the church. The individual churches own the property on which the churches are located, insure them individually and have control over who they employ as their pastors. Although the pastors of the Assemblies of God are licensed liaand ordained by the GC, which has the right to intervene when a pastor has acted in an inappropriate manner or contrary to the teachings of the church, all the evidence presented leads to the conclusion that the local churches are sovereign and autonomous. The GC and DC have no control over the daily secular or financial aspects of the local church; and, therefore, there is no master-servant relationship between the GC or the DC-and First Assembly.
Plaintiff failed to produce factual support sufficient to establish that she will be able to satisfy her evidentiary burden of proof at trial with regard to the GC’s and the DC’s liability to her. Because she has failed to do so, there is no genuine issue of material fact, and summary judgment was appropriately granted as to both the GC and the DC with regard to the master-servant issue. Therefore, this assignment of eiror is without merit.

Single-Business Enterprise

The single-business-enterprise doctrine is a theory for imposing liability where two or more business entities act as one. Brown v. ANA Ins. Grp., 07-2116 (La.10/14/08), 994 So.2d 1265. Generally, under this doctrine, when corporations integrate their resources in operations to achieve a common business purpose, each business may be held-liable for wrongful acts done in pursuit of that purpose. Brown, supra; Brown v. Auto. Cas. Ins. Co., 93-2169 (La.App. 1st Cir.10/7/94), 644 So.2d 723, writ denied, 94-2748 (La.1/6/95), 648 So.2d 932.
Whether two or more entities comprise a single-business enterprise is a factual determination to be decided by the trier of. fact which is subject to the manifest error standard of review. Town of Haynesville, Inc. v. Entergy Corp., 42,-019 (La.App.2d Cir.5/2/07), 956 So.2d 192, writ denied, 07-1172 (La.9/21/07), 964 So.2d 334; Coleman v. Burgundy Oaks, L.L.C., 46,314 (La.App.2d Cir.6/8/11), 71 So.3d 352.
When determining whether a corporation is an alter ego, agent, tool or instrumentality of another corporation, the court is required to look to the substance of the corporate structure rather than its form. The courts have considered various factors to support an • argument that a group of entities constitute a single-business enterprise. These factors can include such things as whether corporations have substantial identity of ownership, that is, ownership of sufficient stock to .give actual working control over another corporation; common directors or officers; unified administrative control of corporations- whose business functions are similar or supplementary; directors and officers of one corporation acting independently in the interest of that corporation; corporation financing another corporation; corporation paying the salaries and other expenses or losses of another corporation; receiving no business other than that given to it by its affiliated corporations; corporation using ■ the property of another corporation as its own; noncompliance with- corporate formalities; and common *135 employees and services rendered by the employees of one corporation on behalf of another corporation. This list is illustrative and is not intended as an exhaustive list of relevant factors. No one factor is dispositive of the issue of single-business enterprise. See Green v. Champion Ins. Co., 577 So.2d 249 (La.App. 1st Cir.1991), writ denied, 580 So.2d 668 (La.1991).
| uThe GC and the DC presented evidence in the form of the Constitution and By-laws, as well as deposition testimony, which showed that First Assembly is a sovereign and autonomous entity over which they had no control. The GC and the DC are separately incorporated, as is each church, which becomes a part of the Assemblies of God fellowship. Judged by the substance of corporate structure rather than the -form, the GC and the DC do not share officers and directors with local churches, do not pay the salaries of the local pastors, do not act independently on behalf of the local churches and do not insure the properties owned by the local churches. Plaintiff presented no evidence to controvert that of the GC and the DC showing that there is no single-business enterprise between them. Therefore, there are no genuine issues of material fact remaining in this regard, and this assignment of error is without merit.

Unincorporated Association

In Errrnrt, supra, the Louisiana Supreme Court thoroughly discussed the law pertaining to unincorporated associations and stated that an unincorporated association is created in the same manner as a partnership, by a contract between two or more persons to combine their efforts, resources, knowledge or activities for a purpose other than profit or commercial benefit. The common intent of the parties is the controlling factor in interpreting a contract. La. C.C. art. .2045. For an unincorporated association to possess juridical personality, the object of the contract of association must necessarily be the creation of an entity whose personality is distinct from that of its members. Unless such an intent exists,' the parties do not create, a 11fifictitious .person, but, instead, simply incur obligations among themselves. Consequently, an unincorporated association, as a juridical person distinct from its members, does not come into existence or commence merely by virtue of the fortuitous creation of a community of interest or the fact that a number of individuals have simply -acted together; there must also be an agreement whereby two or more persons combine certain attributes to create a separate entity for a legitimate purpose. While the parties need not specifically intend or have knowledge of all the legal ramifications of juridical personality, they must at least conceive of their creation as a being or thing separate from themselves,
Although the trial court may not have specifically addressed the issue of unincorporated association in its reasons for judgment, it had previously stated that no genuine issues of material fact remained with regard to the DC’s and the GC’s liability to Plaintiff under other theories of liability that were' based on the same factual circumstances. Clearly, under the Constitution and the By-laws, all three levels of the church are' separate corporate entities, and the sovereign nature of the local churches is often reiterated. Through the Constitution and the Bylaws, the GC has devised a method by which the DC and the individual churches are created to act autonomously and free of!the DC and the-GC in all but doctrinal theory. ■ Therefore, there-is no agreement whereby two or more persons- combine certain attributes to create a separate entity for a legitimate purpose in regard to the *136 Assemblies of God, and there is no unincorporated association. For the foregoing reasons, this assignment of error is without merit; ■

^CONCLUSION

Based on the foregoing, the judgment of the trial court granting the motions for summary judgment in favor of Defendants, the General Council of the Assemblies of God and the" Louisiana District of the Assemblies of God, and against Plaintiff, Irene K. Che, individually and on behalf Of her minor daughter, Messoma S. Ejezie, is affirmed. Costs of this appeal are assessed to Plaintiff Irene K, Che.
AFFIRMED.