Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,869-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DANNY C. WEAVER, ET AL.                    Plaintiffs-Appellants

versus

CITY OF SHREVEPORT, ET AL.                 Defendants-Appellees

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 589,217

Honorable Ramon Lafitte, Judge

* * * * *

DUNAHOE LAW FIRM                          Counsel for Appellants,
By: Jared Dunahoe                          Rebecca Weaver Martin,
                                           Danny C. Weaver,
                                           Delores Weaver
                                           Winderweedle, Terri
                                           Weaver Escude, and
                                           Linda Kay Weaver Pharr


LAW OFFICE OF                              Counsel for Appellees,
REGINALD W. ABRAMS, LLC                    City of Shreveport,
By: Reginald W. Abrams                      Sgt. Larry J. Scott,
                                           Sgt. Jeff Peters,
                                           Corp. Joel Davidson


MARY KATHERINE CRYAR                       Counsel for Appellee,
                                           Columbia Casualty
                                           Company

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY, BYRD & CROMWELL, L.L.P.
By: Edwin Henry Byrd, III

Counsel for Appellees,
Caddo Parish Sheriff
Steve Prator and Deputy
Sheriff Earlton Parker

LUNN, IRION, SALLEY,
CARLISLE & GARDNER
By: Alexander J. Mijalis

Counsel for Appellee,
American Alternative
Insurance Corporation

* * * * *

Before STONE, STEPHENS, and McCALLUM, JJ.

**STEPHENS, J.**

The plaintiffs, Danny C. Weaver, Delores Weaver Winderweedle, Terri Weaver Escude, Linda Kay Weaver Pharr, and Rebecca Weaver Martin (collectively, the "Weavers"), appeal from the trial court's judgment granting the motion for partial summary judgment in favor of the defendants, the City of Shreveport, Sergeant Lee Scott, Sergeant Jeff Peters, and Corporal Joel Davidson (collectively, the "City"). For the following reasons, we reverse the trial court's judgment.

## FACTS

This matter arises out of the deaths of Linda and Obie Weaver, who were victims of a motor vehicle collision with Damian Pea that occurred on December 18, 2014. On that date, the Caddo Parish Sheriff's Office (the "CPSO") and the Shreveport Police Department (the "SPD") were attempting to arrest Pea on various outstanding warrants issued by the State of Oklahoma. The record reflects some dispute whether the Street Level Interdiction Unit (a unit of the Caddo-Shreveport Narcotics Unit consisting of both SPD officers and CPSO deputies) was officially involved in the operation. There is no question some CPSO deputies and SPD officers were engaged in the operation, which culminated in a high-speed pursuit of Pea and the deaths of Linda and Obie Weaver.

Prior to the incident, Teketia Pipkins had been in an exceedingly abusive relationship with Pea in Oklahoma. In connection with their relationship, Pea had been arrested several times in that state, and there were various outstanding warrants for his arrest. Pipkins' children were in the state's custody as a result of the abuse. She moved back to Shreveport, and Pea followed her. While in Shreveport and fearful for her safety, Pipkins

contacted a personal acquaintance, Deputy Lifford Jackson of the CPSO, who referred her to SPD officer Sgt. Scott. As a result of that contact between Sgt. Scott and Pipkins, on December 18, Pipkins picked Pea up and drove with him to a Circle K gas station on West 70th Street. Sergeant Scott had arranged for law enforcement officers to approach and arrest Pea at the Circle K, but when Pipkins exited her vehicle, she left the keys inside it. At that point, CPSO Deputy Earlton Parker, SPD Officer Ryan Holley, and other agents approached the vehicle from the rear. Deputy Parker exited Ofc. Holley's vehicle. At the same time, Pea moved from the passenger seat to the driver's seat and turned on the vehicle's ignition. The vehicle containing Pea was not blocked in, and he was able to drive away from the Circle K gas station. A high-speed pursuit of Pea ensued.

The police chase of Pea was over 11 minutes long. Pea and law enforcement units sped in excess of 90 miles per hour through several residential and commercial neighborhoods at night and in the rain. At some point during the pursuit on Jewella Avenue, Pea's vehicle struck a civilian vehicle, causing Pea to have a flat tire and cross the median. Pea continued to drive against the flow of traffic until he struck, head on, the vehicle occupied by Linda and Obie Weaver. As a result of the injuries sustained from the impact of the crash, Linda and Obie both died shortly thereafter. Pea was pronounced dead on the scene.

On December 3, 2015, the Weavers (who are the children of Linda and Obie) filed suit against the City of Shreveport, SPD Sgt. Larry Scott, SPD Sgt. Jeff Peters, Caddo Parish Sheriff Steve Prator (the "Sheriff"), CPSO Dep. Sheriff Earlton Parker, and CPSO Dep. Sheriff Joel Davidson. The Weavers alleged the joint operation to arrest Pea and resulting pursuit

2

was negligently planned and executed. In their second amending petition, the Weavers added as defendants the parties' respective insurers and Pipkins, alleging she "was operating as an employee, representative, agent and/or volunteer" of the City and/or Sheriff Prator, as well as being under their direction and/or control. In their third amending petition, the Weavers alleged (among other additional allegations) that the City and Sheriff Prator were vicariously liable for the actions of Pipkins.

The City filed an exception of no cause of action and motion for partial summary judgment on September 28, 2017. The City moved for summary judgment on the basis that no master-servant relationship existed between it and Pipkins such that the city would be vicariously liable for Pipkins' actions (*i.e.*, leaving the keys in the vehicle that allowed Pea to initiate the chase). The Weavers filed an opposing motion for summary judgment on the same issue, arguing conversely that the City was vicariously liable for Pipkins' actions. The City's motion was granted, and judgment was entered in favor of the City.[1] This appeal by the Weavers ensued.[2]

## DISCUSSION

The Weavers raise only one assignment of error on appeal. They argue the trial court erred in granting the City's motion for partial summary judgment because there exists a genuine issue of material fact as to whether the City was vicariously liable for Pipkins' negligent acts. According to the

---

[1] The trial court denied the City's exception of no cause of action.

[2] Following the filing of the City's motion for summary judgment, Sheriff Prator and Dep. Parker filed a motion for summary judgment on October 2, 2017. Judgment was entered on behalf of the Sheriff and Dep. Parker on January 9, 2018, and an appeal ensued by the Weavers. That judgment was reversed and remanded to the trial court. *Weaver v. City of Shreveport*, 52,407 (La. App. 2 Cir. 12/19/18), 261 So. 3d 1079.

Weavers, the facts establish that Pipkins was acting as a volunteer for the City during the operation regarding the apprehension of Pea, making the City vicariously liable for her actions. They argue that Sgt. Scott asked Pipkins if she would "volunteer" to pick up Pea in order for law enforcement to facilitate the arrest of Pea. The Weavers maintain that Pipkins acted in accordance with directions of the City. As to the trial court's reasons for judgment and its statement that "Pipkins had her own agenda in wanting Pea arrested for her own personal safety and for the safety of her children," the Weavers note that an individual can volunteer for a myriad of reasons. "Selfish motives" of the volunteer, as characterized by the Weavers, do not change the status of a volunteer. We agree.

Summary judgments are reviewed *de novo* on appeal, with the reviewing court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966; *Smith v. Robinson*, 2018-0728 (La. 12/5/18), 265 So. 3d 740, 744; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130; *Capital One Bank (USA) NA v. Thompson*, 47,994 (La. App. 2 Cir. 5/15/13), 115 So. 3d 704. We view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So. 2d 764. When considering a motion for summary judgment, it is improper to weigh the evidence or determine the truth of the matter; rather, the trial court is only to determine whether there is a genuine issue of fact for trial. *Franklin, supra.*

4

A genuine issue is one about which reasonable persons could disagree. *Hines, supra*; *Franklin, supra.* A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. *Hines, supra*; *Franklin, supra.* Whether a fact is "material" for purposes of summary judgment is determined in light of the substantive law applicable to the particular case. *Richard v. Hall*, 2003-1488 (La. 4/23/04), 874 So. 2d 131.

The substantive law upon which the Weavers' claim against the City is based arises from La. C.C. art. 2320, which provides that masters and employers are answerable for the damage caused by their servants in the exercise of the functions in which they are employed. For liability to attach under art. 2320, the Weavers must show a master-servant relationship existed. That is, was Pipkins, considering these particular facts, the City's servant in this law enforcement operation leading to Linda's and Obie's deaths? *See Knoten v. Westbrook*, 2014-0892 (La. App. 4 Cir. 5/18/16), 193 So. 3d 380, *writ denied,* 2016-1260 (La. 10/28/16)*, citing, Richard v. Hall, supra*; *see also Whetstone v. Dixon*, 616 So. 2d 764 (La. App. 1 Cir. 1993), *writs denied*, 623 So. 2d 1333 (La. 1993).

A servant is one employed to perform services in the affairs of another and who is subject to the other's control or right of control with respect to the physical conduct in the performance of the services. *Che v. First Assembly of God, Ruston, LA*, 50,360 (La. App. 2 Cir. 1/13/16), 185 So. 3d 125, *citing, Ermert v. Hartford Ins. Co.*, 559 So. 2d 467 (La. 1990).

An unpaid volunteer may be deemed a servant of the organization accepting his services based upon the organization's right to control the volunteer's activities. *Cason v. Saniford*, 2013-1825 (La. App. 1 Cir.

5

6/6/14), 148 So. 3d 8, *writ denied*, 2014-1431 (La. 10/24/14), 151 So. 3d 602; *Whetstone*, 616 So. 2d at 770. The relationship of master and servant may arise by implication and there need be no express contract of employment. *Bates v. Lagars*, 193 So. 2d 375 (La. App. 2 Cir. 1966), *writ ref'd*, 250 La. 267, 195 So. 2d 146 (1967). Where a volunteer renders a beneficial service for an alleged master in the presence of the master or with the master's knowledge and is permitted to proceed without dissent, an assent may be implied. Thus, the relation of master and servant is established to an extent necessary to render the master liable to third persons for the tortious acts of the volunteer done in the course of such service. *Id.,* at 380. This principle is applicable where a volunteer (*i.e.*, Pipkins) renders services for another (*i.e.*, the City) under circumstances such as those shown to exist in the instant case.

The Weavers rely on deposition testimony in support of their position that Pipkins was a servant rendering services for a master, the City. In her deposition, Pipkins confirms that she was not paid by the City, and stated that Sgt. Scott asked her to "volunteer" to pick up Pea in order to effectuate his apprehension—a point she reiterated. Pipkins was clear in her testimony that she did everything Sgt. Scott told her and followed his directions precisely. Pipkins specifically stated she would have taken the keys out of the vehicle had Sgt. Scott instructed her to do so.

The Weavers also rely on deposition testimony of several law enforcement officers which shows a deliberate police stratagem aimed at the arrest of Pea. Sergeant Scott specifically stated he instructed Pipkins "to take the key out of the ignition and to enter the Circle K as if she was buying gas." In their depositions, Officer M.A. Gerbine described Pipkins as a

6

"confidential informant," while Officer Donald Belanger characterized Pipkins as a "cooperating individual" who was assisting them in a "vehicle takedown" at the Circle K. Deputy Parker and Officer C.P. Neville generally described the operation involving Pipkins, with Ofc. Neville noting that law enforcement officers knew Pea would be at the Circle K. Agent Ryan Holley recalled that he knew Pea would be driven to the Circle K parking lot by Pipkins, and he described the police communications involving the plan.

There is no doubt this was a law enforcement operation seeking to arrest Pea; the question at issue involves Pipkins' role in that operation. There is a genuine issue of material fact whether the City exercised control with respect to Pipkins' actions regarding Pea's arrest and whether Pipkins was beneficial in achieving that end. The evidence provided by the Weavers tends to show disputed facts regarding the issue of a master-servant relationship between Pipkins and the City. Notably, Pipkins regarded herself as a "volunteer" for the City. It is evident that she and the City were pursuing a common course of action to reach a certain goal and to accomplish a certain purpose, that is, the apprehension and arrest of Pea. Although Pipkins explained she was uncomfortable with and resisted Sgt. Scott's initial suggestion that Pea be picked up in a traffic stop, her description of events leading up to the Circle K indicates she was acting in concert with an ultimate plan of apprehending Pea. This was something Pipkins could not have pulled off alone—law enforcement was an integral component of the operation. Regardless of Pipkins' "agenda" (as characterized by the trial court), the facts tend to show she was in concert with the City—whose driving force was the apprehension of Pea, a wanted

7

criminal. Sergeant Scott explicitly stated he instructed Pipkins to remove the keys from the ignition. Even if Pipkins did not comply, Sgt. Scott's statement indicates his belief that he exercised control over her actions. Thus, we conclude that whether Pipkins was acting as a servant of the City is a genuine issue of material fact, considering the control exercised by law enforcement and the beneficial services provided by Pipkins—she did not merely phone in a tip to police, she actively participated in the operation. The Weavers' assignment of error is with merit, and we conclude the judgment by the trial court on this issue was in error.

Finally, we note that the trial court's instant ruling on behalf of the City is adverse to a previous ruling it made on a motion for summary judgment by the Sheriff's insurer, Columbia Casualty Company ("Columbia Casualty"). In their lawsuit, the Weavers alleged that Pipkins was an insured under Sheriff Prator's insurance policy with Columbia Casualty. That policy included as a defined insured, "authorized volunteers of the law enforcement agency." On the issue of Pipkins' coverage under the parish insurance policy, the Weavers and Columbia Casualty had cross-motions for summary judgment as to whether Pipkins was acting as an authorized volunteer for the Sheriff during the operation to arrest Pea. In denying Columbia Casualty's motion, the trial court noted:

> It's pretty clear to me what a volunteer is, and I think when the police department reached out to her and asked her to help and she said, yes, she volunteered to help. Even though it was, I guess, her boyfriend that they were after and she wanted him arrested, that does not in my mind take her out of the realm of being a volunteer.
>
> * * * *
> There is an issue of fact as to who she was volunteering for. No doubt in my mind that she was a volunteer . . . . Which unit she

8

was working for or which department if not the unit, that remains to be proven. So, there is an issue of fact.

* * * *

[S]he's a volunteer. There's an issue of fact as to whether or not she was working for the City, the Department, [or] the task force.

Thus, on essentially the same evidence, the trial court has already determined there exists a genuine issue of material fact as to whether Pipkins was acting as a volunteer/servant for this joint police unit when she participated in the operation to arrest Pea.

## CONCLUSION

For the reasons stated above, we reverse the judgment of the trial court granting the motion for partial summary judgment in favor of the defendants, the City of Shreveport, Sgt. Lee Scott, Sgt. Jeff Peters, and Corp. Joel Davidson. In compliance with La. R.S. 13:5112, relative to fixing the amount of court costs assessed against a political subdivision, costs of this appeal are assessed to the City of Shreveport in the amount of $649.52.

**REVERSED.**