STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

**2024 CA 0422**

JAMES J. DONELON, COMMISSIONER OF INSURANCE
FOR THE STATE OF LOUISIANA

VERSUS

AMERICAS INSURANCE COMPANY

*~CONSOLIDATED WITH~*

**2024 CA 0423**

CADENCE BANK

VERSUS

BILLY BOSTICK, IN HIS CAPACITY AS RECEIVER FOR ASSURANCE HOLDING
CORPORATION, ASSURE UNDERWRITING AGENCY, AND AMERICAN INSURANCE
COMPANY

JUDGMENT RENDERED: **DEC 2 0 2024**

* * * * * * *

On Appeal from the Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number C-714982 *c/w* C-717212 • Section 23

The Honorable Kelly Balfour, Presiding Judge

* * * * * * *

Phillip J. Antis, Jr.
Ewell E. Eagan
Alex B. Rothenberg
Gerald Waltman III
New Orleans, Louisiana
 *-and-*
Michael E. Demont, *pro hac vice*
Jacksonville, Florida

COUNSEL FOR APPELLANT
INTERVENOR, PLAINTIFF, DEFENDANT-
IN-RECONVENTION, PLAINTIFF-IN-
RECONVENTION, THIRD-PARTY PLAINTIFF,
CROSS-CLAIM PLAINTIFF—Cadence Bank

Liz Murrill
*Attorney General*
Michael Guy
*Assistant Attorney General*
Baton Rouge, Louisiana
 *-and-*
Patrick Broyles
Baton Rouge, Louisiana
 *-and-*
J.E. Cullens, Jr.
Andrée Matherne Cullens
S. Layne Lee
Baton Rouge, Louisiana

COUNSEL FOR APPELLEE
PLAINTIFF, DEFENDANT, PLAINTIFF-IN-
RECONVENTION, THIRD-PARTY-
PLAINTIFF— James J. Donelon, the
Commissioner of Insurance for the State of
Louisiana, in his capacity as Liquidator of
Americas Insurance Company, Assure
Holding Corporation, and Assure
Underwriting Agency, LLC, through the
Receiver, Billy J. Bostick

* * * * * * *

**BEFORE: MCCLENDON, WELCH, AND LANIER, JJ.**

**WELCH, J.**

In this receivership proceeding, a creditor of an insolvent and liquidated insurance company appeals the district court's judgment that sustained a peremptory exception raising the objection of no cause of action and granted a motion to enforce the liquidation order, which dismissed the creditor's incidental demands against the insurer, its affiliates, its corporate officers, and their insurers with prejudice. We affirm.

## FACTS & PROCEDURAL HISTORY

Following Hurricane Ida,[1] Americas Insurance Company ("AIC"), a property and casualty insurance company, became insolvent and was unable to pay the hurricane claims filed by Louisiana policyholders. James J. Donelon, the Commissioner of Insurance for the State of Louisiana, filed a verified petition against AIC on January 14, 2022, pursuant to the Rehabilitation, Liquidation, Conservation Act ("RLCA"), La. R.S. 22:2001 *et seq.*, for ancillary receivership and conservation, injunctive relief, re-domestication for domestic rehabilitation, and an alternative rule to show cause.[2] The Commissioner sought a variety of immediate orders, including the Commissioner's appointment as the Ancillary Receiver for AIC.

On January 14, 2022, the district court signed a Rehabilitation Order placing AIC into Ancillary Receivership; re-domesticating AIC from the District of Columbia to Louisiana; converting the ancillary receivership to a rehabilitation proceeding; placing AIC into rehabilitation; naming the Commissioner as Rehabilitator; and naming Billy J. Bostick as Receiver of AIC.

---

[1] Hurricane Ida made landfall in Louisiana on August 29, 2021.

[2] See **Donelon v. Americas Insurance Company**, Docket Number C-714982, Section 23, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

The Commissioner amended his verified petition to name Assure Company ("AHC"), the holding company of AIC, and Assure Underwriting Agency, LLC ("AUA"), the managing general agency for AIC, as defendants (collectively, the "AIC companies").[3] The district court signed an order on the amended verified petition on February 2, 2022, decreeing that its January 14, 2022 Rehabilitation Order remain in effect and placing AHC and AUA into rehabilitation with AIC. The two Rehabilitation Orders placed the Commissioner and Receiver in possession of all assets of the AIC companies, including bank accounts; enjoined all individuals from instituting or taking further action in any suit or proceeding against the AIC companies, the Commissioner (in his capacity as Rehabilitator), or the Receiver; and stayed all suits, proceedings, seizures, and any other legal actions against the AIC companies in order to prevent the obtaining of any preference, judgment, seizure, levy, or lien, and to preserve the property and assets of the AIC companies.

To ensure the payment of AIC policyholders' claims and to avoid a blanket cancellation of AIC's policies that would leave thousands of policyholders without insurance coverage during the receivership proceeding, the district court signed an order authorizing the Louisiana Insurance Guaranty Association ("LIGA") to fund the AIC policyholders' claims incurred prior to February 1, 2022. Pursuant to an Assignment and Assumption Agreement and a Funding Agreement, the district court signed an order granting the Commissioner's motion to approve SafePoint Insurance Company's assumption of the AIC policies for any losses occurring after February 1, 2022.

---

[3] Under financial stress due to the Hurricane Ida claims, AHC and AUA filed voluntary petitions for Chapter 11 bankruptcy relief. See Case Nos. 21-11453 and 21-11436, United States Bankruptcy Court, Eastern District of Louisiana. Due to the pending bankruptcy proceedings, the Commissioner did not include AHC or AUA in his original verified petition. The bankruptcy proceedings were then dismissed on January 26, 2022, pursuant to an order entered on January 28, 2022.

On March 23, 2022, Cadence Bank (the "Bank") filed an *ex parte* petition to intervene in the receivership proceeding to protect its rights as a purported first-priority lienholder of AIC. The Bank alleged it extended an $8 million loan to AHC, the holding company of AIC, on November 18, 2020, in partnership with the federal government through the Main Street Lending Program ("MSLP").[4] The Bank sought injunctive relief to prevent the Receiver from using the Bank's collateral for purposes other than repayment of the $8 million loan. The district court ordered the filing of the Bank's petition for intervention.

Two days later on March 25, 2022, the Bank filed a separate action for injunctive relief, seeking a temporary restraining order ("TRO"), preliminary injunction, and permanent injunction against Mr. Bostick, in his capacity as Receiver for the AIC companies.[5] The Bank sought to protect its alleged first-priority lien on the cash assets of the AIC companies and to limit the Receiver from using the Bank's funds for any purpose other than repayment of the $8 million loan. The district court entered a TRO on March 28, 2022, enjoining the Receiver from "allowing [the AIC companies] to use [the Bank's] cash collateral for purposes other than paying down the [$8 million] [l]oan."

In the Bank's injunction action, the parties ultimately stipulated to a Consent Order, signed by the district court on May 10, 2022. Pertinently, the Consent Order: dissolved the TRO issued on March 28, 2022; continued the hearing on the preliminary injunction without date; ordered the Receiver to maintain at least $6.25 million in the AIC companies' cash accounts at the Bank beginning March 28, 2022,

---

[4] The Federal Reserve established the MSLP to support lending to small and medium-sized for-profit businesses and nonprofit organizations that were in sound financial condition before the onset of the COVID-19 pandemic. The program terminated on January 8, 2021. See *Board of Governors of the Federal Reserve System*, "Main Street Lending Program," https://www.federalreserve.gov/monetarypolicy/mainstreetlending.htm (last accessed September 20, 2024).

[5] See **Cadance Bank v. Billy Bostick**, Docket Number C-717212, Section 27, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.

4

and continuing for the period of time necessary for the parties to litigate, or otherwise resolve, all issues related to the Bank's alleged lien against all cash accounts or other assets of the AIC companies; ordered the utilization of net proceeds arising out of the Assumption and Assignment Agreement between AIC and SafePoint to pay down the balance owed to the Bank; and consolidated the Bank's injunction action with the Commissioner's prior-filed receivership action. The district court also signed a separate order consolidating the receivership proceeding and the injunction action on June 29, 2022.

Thereafter, the Commissioner and Receiver requested that the district court enter an order finding the AIC companies insolvent and ordering the liquidation of those companies. The Commissioner and Receiver averred that as of September 30, 2021, AIC's liabilities exceeded its admitted assets, capital, and surplus by over $40 million and that AIC remained unable to pay its obligations. Additionally, the Commissioner and Receiver noted that the business and financial condition of AHC and AUA were inextricably interwoven with AIC, rendering all three companies insolvent.

On June 23, 2022, the district court entered an order of liquidation and finding of insolvency. Pertinently, the district court declared the AIC companies insolvent; appointed the Commissioner as Liquidator; ordered that Mr. Bostick remain appointed as Receiver; cancelled all insurance policies issued by AIC; acknowledged the May 10, 2022 Consent Order signed in the Bank's injunction action; and ordered that the Consent Order remain in effect for the period of time necessary for the parties to litigate, or otherwise resolve, all issues related to the Bank's alleged lien against the cash accounts or other assets of the AIC companies.

Thereafter, the Commissioner, in his capacity as Liquidator of the AIC companies, through the Receiver, answered the Bank's petition for intervention, raised affirmative defenses, and asserted a reconventional demand and third party

5

demands. In its reconventional demand against the Bank, the Receiver alleged fraudulent transfer, aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, and unjust enrichment. The Receiver raised third-party demands, alleging breach of fiduciary duty and negligent administration against Ray Pate, Jr. (CEO and director of AIC; President of AIC and AHC from 2015-2022); Alexander "Chip" L. Blondeau (Director, Audit Committee Chair, and Member of the Executive Committee of the AIC companies); and the two insurers purportedly liable for the corporate officers' alleged acts, XL Specialty Insurance Company ("XL Insurance") and Capitol Specialty Insurance Company ("CapSpecialty Insurance").[6]

The Receiver further alleged that prior to the Bank extending the $8 million loan to AHC, the AIC companies were already in significant financial trouble. The Receiver contended that Mr. Pate and Mr. Blondeau—with considerable assistance and encouragement from the Bank—misled, manipulated, and deceived the regulators of the AIC companies by concealing that AIC had pledged all of its assets to secure the $8 million loan. The Bank claimed the corporate officers, "with the assistance of [the] Bank, effectively disguised AIC's hazardous financial condition caused by the terms of the ... Bank loan from the regulating authorities."[7] The Receiver contended that in doing so, the AIC companies failed to comply with statutory accounting and reporting requirements regarding the companies' financial condition. As a result of those actions and the terms and conditions of the Bank loan, the Receiver alleged that AIC became further financially impaired and posed a

_____

[6] The Commissioner averred that the insurers "are liable to the Receiver, jointly, severally[,] and _in solido_ with [Mr. Pate and Mr. Blondeau] to the extent of the limits of their respective policies of insurance."

[7] The Receiver contended that the corporate officers breached their duties of loyalty and care and showed a conscious disregard for the best interests of the AIC companies, their shareholders, members, policyholders, claimants, creditors, and/or the public. The Receiver also alleged that the conduct of Mr. Pate and Mr. Blondeau constituted gross negligence, and in some instances, constituted willful/intentional misconduct.

hazard to the shareholders, policyholders, and creditors. Had the accurate terms and impact of the Bank loan been truthfully disclosed to regulators, the Receiver claimed the AIC companies would have been placed into receivership well before the companies faced Hurricane Ida claims from policyholders and creditors that AIC could not pay.

The Receiver sought compensatory damages in the form of the total amount of claims which the AIC companies were unable to pay; administration costs from the rehabilitation and liquidation proceedings; all fees, expenses, and compensation paid by the AIC companies to any named defendant; litigation costs; judicial interest; attorney's fees; and any and all equitable relief to which the Receiver may be entitled.[8] The Receiver maintained that "[t]o determine the full extent of the Receiver's compensatory damages and the degree of liability of each of the named Defendants herein, it is necessary and appropriate that all parties potentially liable to the Receiver be joined in the same proceeding."[9]

The Bank answered the Receiver's reconventional demand and raised affirmative defenses.[10] The Bank also asserted a reconventional demand against the AIC companies; third party demands against Assure Re Intermediaries, Inc. ("ARI"), ISG Acquisition II, LLC ("ISG"), Americas Sub Holding Corporation ("ASH"), and Quality Casualty Insurance Company, Inc. ("QCI") (collectively, the "AIC subsidiaries"); and cross claims against Mr. Pate, Mr. Blondeu, Anne Missett

---

[8] In his first amended third party demand and reconventional demand, the Receiver removed all allegations regarding the specific amount of monetary damages sought from the named third-party defendants and defendant-in-reconvention, seeking "damages in the form of the total amount of claims which AIC is unable to pay[.]"

[9] The Receiver maintained that the causes of action asserted by him against Mr. Pate, Mr. Blondeau, and their insurers arise "out of the transaction or occurrence that is the subject matter of the [Bank's petition for intervention]. The [corporate officers] and [their insurers] share a community of interest with [the] Bank because the Receiver's claims against [the] Bank, the [corporate officers], and [their insurers] all arise out of the same operative facts and present factual and legal issues that are inherently intertwined."

[10] The Bank later amended its answer to assert an additional defense.

7

(AIC's Chief Operating Office, Executive Vice-President, and Secretary) (collectively, the "D&O defendants"), and their insurers, XL Insurance and CapSpecialty Insurance.

Against the AIC companies and the AIC subsidiaries (collectively, the "credit parties"), the Bank asserted a cause of action for a declaratory judgment of its status and rights as a secured creditor; breach of contract; and indemnification. Against the credit parties and the D&O defendants, the Bank asserted a cause of action for negligent misrepresentation; detrimental reliance and estoppel; and in the alternative, unjust enrichment. Against XL Insurance and CapSpecialty Insurance, the Bank argued the insurers were liable under Louisiana's Direct Action Statute, La. R.S. 22:1269. The Bank sought a declaratory judgment that the loan documents constituted the obligation of each credit party and that the Bank holds a valid and perfected first-priority security interest and lien on the assets and collateral as agreed to by the parties in the loan documents; a monetary judgment against the credit parties for the full amount of the loan, including principal, interest, attorney's fees, and costs; compensatory damages; litigation costs; indemnification; judicial interest, attorney's fees; and any and all equitable relief to which the Bank may be entitled.

In response, the Receiver filed a peremptory exception raising the objections of no cause of action and no right of action, a declinatory exception raising the objection of *lis pendens*, and a motion to enforce the district court's June 23, 2022 Liquidation Order. The Receiver excepted to the Bank's incidental demands only: its reconventional demand against the AIC companies; third-party demand against the AIC subsidiaries; and cross claims against the D&O defendants and their insurers. The Receiver argued that the Bank's incidental demands were "unsecured, general creditor claims against the general assets of the AIC companies," which must be resolved through the proof-of-claim process set forth in the RLCA and in accordance with the district court's June 23, 2022 Liquidation Order. The Receiver

8

indicated that the Bank had filed a proof-of-claim.[11] Pursuant to the RLCA's proof-of-claim process, which strictly governs the rights of creditors to the assets of insolvent insurers such as the AIC companies, the manner in which such claims must be made, the procedure for adjudicating claims, and the priority scheme for paying claims from the general assets of the estate, the Receiver argued the Bank is expressly prohibited by law and the Liquidation Order from attempting to circumvent that process through the filing of incidental demands. The Receiver also argued that the Bank's request for a declaratory judgment was precluded by *lis pendens*.

The Bank opposed the Receiver's exceptions, contending that it is allowed to assert its own claims and incidental demands in response to the Receiver's allegations and must do so as required by La. C.C.P. arts. 425(A), 1061(B), and the doctrine of *res judicata*. The Bank argued that the Receiver agreed—through the Liquidation Order and Consent Order—that all of the claims related to the $8 million loan would be heard by the district court in "litigation" in the receivership proceeding, not the proof-of-claims process. By agreeing to litigate claims regarding the loan outside the proof-of-claims process, the Bank argued the Receiver waived its arguments that the Bank's claims are barred. If the district court enforced the Liquidation Order, which the Bank claimed permitted the parties to litigate issues regarding the loan, the Bank argued the district court must also deny the Receiver's exceptions.

In reply, the Receiver stated that it never intended to, and in fact did not, waive its statutory rights, defenses, powers, and protections under the RLCA when it agreed to the Consent Order, nor did the Consent Order exempt the Bank from the district court's Liquidation Order, the mandatory proof-of-claims process under La.

---

[11] The Bank attached a copy of its proof-of-claim to its answer to the Receiver's reconventional demand.

9

R.S. 22:2028, the mandatory priority scheme set forth in La. R.S. 22:2025, or the essential safeguards provided by La. R.S. 22:2043.1. The Receiver averred that the Consent Order did not exempt the Bank from the RLCA; rather, the Consent Order "bought the parties time and gave the [B]ank assurance that the estate would not spend its purported cash collateral prior to the determination and adjudication of its claim in accordance with the RLCA." The Receiver argued that "the use of the word 'litigate' does not constitute an express waiver of the RLCA. The Receiver never intended to waive his statutory rights. To the contrary, the Receiver expressly reserved "all other legal rights, substantive and procedural, [he] may possess in connection with this action" and the receivership proceeding.

Following a hearing held on September 25, 2023, the district court sustained the Receiver's peremptory exception raising the objection of no cause of action and granted the Receiver's motion to enforce the liquidation order. The district court signed a judgment in conformity therewith on October 23, 2023,[12] which pertinently decreed:

> **IT IS HEREBY ORDERED, ADJUDGED[,] AND DECREED** that the [e]xception of [n]o [c]ause of [a]ction filed herein by the Receiver is **SUSTAINED**; all of [the] Bank's incidental demands[13] … are hereby dismissed with prejudice, with the effect of the [t]hird [p]arties [ARI], [ISG], [ASH], [QCI], and [Ms.] Missett being dismissed from this suit; however, as stipulated by the Receiver, [the] Bank may amend its proof of claim

---

[12] The district court's October 23, 2023 judgment was silent as to the Receiver's declinatory exception raising the objection of *lis pendens*. Silence in a judgment as to any issue that was placed before the district court is deemed a rejection of that demand or issue. **Robertson v. Sun Life Financial**, 2009-2275 (La. App. 1 Cir. 6/11/10), 40 So.3d 507, 510. Thus, silence in the judgment as to the Receiver's exception of *lis pendens* is deemed a denial of that exception.

Also considered at the September 25, 2023 hearing was a peremptory exception raising the objection of no cause of action and a dilatory exception raising the objection of vagueness filed by Mr. Pate and Mr. Blondeau; a peremptory exception raising the objection of no cause of action filed by XL Insurance; and a peremptory exception raising the objections of no cause of action and no right of action filed by Ms. Missett. The district court denied all those exceptions as moot in the October 23, 2023 judgment. Those rulings are not at issue on appeal.

[13] The incidental demands are those appearing on page 24, paragraph 1 and continuing through page 53, paragraph 153, of the Bank's pleading titled, "Answer, Affirmative Defenses, Reconventional Demand, Cross-Claims, and Third Party Demands."

filed in the receivership proceeding pursuant to La. R.S. 22:2001 *et seq.*;

**IT IS FURTHER ORDERED, ADJUDGED[,] AND DECREED** that the "Motion to Enforce the Liquidation Order" filed herein by the Receiver is **GRANTED**; [the] Bank is enjoined from asserting the incidental demands[14] ... pursuant to the [o]rder of [l]iquidation and [f]inding of [i]nsolvency issued herein on June 23, 2022; however, as stipulated by the Receiver, [the] Bank may amend its proof of claim filed in the receivership action pursuant to La. R.S. 22:2001 *et seq*[.]

The Bank now appeals.[15]

## NO CAUSE OF ACTION

The question raised herein by the Bank is whether the district court erred in sustaining the Receiver's peremptory exception raising the objection of no cause of action. A cause of action, for purposes of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. **Ramey v. DeCaire**, 2003-1299 (La. 3/19/04), 869 So.2d 114, 118. The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. **Ramey**, 869 So.2d at 118. The burden of establishing that the petition fails to state a cause of action is on the mover. **MAW Enterprises, L.L.C. v. City of Marksville**, 2014-0090 (La. 9/3/14), 149 So.3d 210, 215.

Generally, no evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 931. All facts pled in the petition

---

[14] See Footnote 13, *supra.*

[15] The Bank timely filed a motion for a devolutive appeal on November 7, 2023. The district court signed an order of appeal on November 13, 2023, notice of which was transmitted by the Clerk of Court to the parties on December 20, 2023. After the appeal was lodged, this court issued a notice of disclosure on August 21, 2024, that Postlewaite & Netterville, APAC, are paid accounting consultants for this court and was a party in this litigation, but was dismissed prior to the filing of this appeal. Additionally, the Receiver filed a motion to strike pleadings and exhibits from the appellate record, specifically, Volumes 13, 14, and 15. This court granted the Receiver's motion, striking Volumes 13, 14, and 15 from the record and ordering the Clerk of Court to return those volumes to the district court. **Donelon v. Americas Insurance Company**, 2024-0422, 2024-0423 (La. App. 1 Cir. 10/1/24) (unpublished action).

must be accepted as true, and any doubts are resolved in favor of the sufficiency of the petition to state a cause of action. **Truitt v. West Feliciana Parish Government,** 2019-0808 (La. App. 1 Cir. 2/21/20), 299 So.3d 100, 103. Facts shown in any documents annexed to the petition must also be accepted as true. See **Spinks Construction, Inc. v. Quad States Construction, LLC,** 2017-0580 (La. App. 1 Cir. 12/21/17), 240 So.3d 215, 220. The correctness of conclusions of law, however, is not conceded for the purposes of a ruling on an exception of no cause of action. **CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc.,** 2015-1260 (La. App. 1 Cir. 9/23/15), 182 So.3d 1009, 1016.

The only issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. **Truitt,** 299 So.3d at 103. If the petition alleges sufficient facts to establish a case cognizable in law, the exception raising the objection of no cause of action must fail. In addition, when a petition states a cause of action as to any ground or portion of a demand, the exception should be overruled. **Truitt,** 299 So.3d at 103. Appellate courts review a judgment sustaining a peremptory exception raising the objection of no cause of action *de novo.* **Ramey,** 869 So.2d at 119.

Whether the plaintiffs have stated a cause of action is based upon interpretation of the statute. The interpretation of any statutory provision starts with the language of the statute itself. **Oubre v. Louisiana Citizens Fair Plan,** 2011-0097 (La. 12/16/11), 79 So.3d 987, 997. It is a well-established principle of statutory construction that, absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; La. R.S. 1:4; **Cleco Evangeline, LLC v. Louisiana Tax Commission,** 2001-2162 (La. 4/3/02), 813 So.2d 351, 354.

12

Words and phrases shall be read with their context and construed according to the common and approved usage of the language. La. R.S. 1:3. Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. **Oubre**, 79 So.3d at 997. The meaning and intent of a law is determined by a consideration of the law in its entirety and all other laws on the same subject matter, and the court's construction should be placed on the provision in question which is consistent with the express terms of law and with the obvious intent of the lawmaker in enacting it. **Richard v. Hall**, 2003-1488 (La. 4/23/04), 874 So.2d 131, 151.

## THE RLCA[16]

Insurance is monitored and regulated by the Louisiana Department of Insurance and its Commissioner. See La. R.S. 22:2(A)(1). One of the Commissioner's primary objectives is to protect policyholders. See La. R.S. 22:2(A)(1); **Donelon v. Shilling**, 2019-00514 (La. 4/27/20), 340 So.3d 786, 791. When a Louisiana insurance company is unable to meet its obligations to its policyholders, the Commissioner initiates a process under the RLCA, La. R.S. 22:2001 *et seq.*, which provides the statutory scheme for regulating insolvent insurers while protecting the interests of the policyholders, creditors, and the public generally. See La. R.S. 22:2005; **Donelon v. Shilling**, 340 So.3d at 791. "Louisiana has a vital interest in the liquidation of insolvent insurance companies which operate

---

[16] Renumbered from La. R.S. 22:732 *et seq.*, to La. R.S. 22:2001 *et seq.*, by 2008 La. Acts No. 415, § 1 (eff. Jan. 1, 2009).

in the State." **Brown v. ANA Insurance Group**, 2007-2116 (La. 10/14/08), 994 So.2d 1265, 1270.

Louisiana's scheme for liquidating insolvent domestic insurers under the RLCA is very similar to proceedings in bankruptcy. **Crist v. Benton Casing Service**, 572 So.2d 99, 100 (La. App. 1 Cir. 1990), writ denied, 573 So.2d 1143 (La. 1991). The RCLA is "comprehensive and exclusive in scope" and balances the interest of policyholders, creditors, and claimants while ensuring the "orderly adjudication of claims" and an equitable distribution of the insurer's assets. **Donelon v. Shilling**, 340 So.3d at 794-95; **Brown v. Associated Insurance Consultants, Inc.**, 97-1396, 97-1397, 97-1398 (La. App. 1 Cir. 6/29/98), 714 So.2d 939, 942. Under the RLCA, efforts are made first to help an insurance company regain its financial footing, which is known as rehabilitation. See La. R.S. 22:2005. If it is determined that the insurance company cannot be rehabilitated, the company is declared insolvent, and the Commissioner will ask the district court to order the liquidation of the company. La. R.S. 22:2008.

Once liquidation is ordered, the district court directs the Commissioner to take possession of the property, business, and affairs of the insurer and to liquidate it. The Commissioner is vested with title to all property, contracts, and rights of action of the insurer as of the date of the order directing liquidation. La. R.S. 22:2008(A); **Brown v. ANA Insurance Group**, 994 So.2d at 1271-72. With court approval, the Commissioner may appoint a Receiver to carry out the duties of the liquidator, such as marshalling the assets of the insurer. La. R.S. 22:2017; **Crist v. Benton Casing Service**, 572 So.2d at 101-02. As Liquidator, the Commissioner is the proper party to sue to enforce any right of a domestic insurer in liquidation. La. C.C.P. art. 693.

The RLCA sets forth a proof-of-claim process that strictly governs the rights of creditors to claim the assets of insolvent insurers. Louisiana Revised Statutes 22:2027 provides for the filing of claims; La. R.S. 22:2025-2026 sets forth the

priority of claims and setoffs; and La. R.S. 22:2028 governs the procedure for adjudicating claims. Without a proof-of-claim process and a priority scheme for paying claims, an insolvent insurer would be quickly overwhelmed with lawsuits as creditors raced to obtain judgments against the estate. This proof-of-claim process ensures the orderly administration and liquidation of the estate, the conservation of assets available to pay claims, and the fair distribution of assets to creditors with allowed claims.[17]

The RLCA also provides safeguards to preserve the assets of the estate and the fair distribution of assets according to the priority scheme. For example, the district court may issue an injunction to prevent interference with the receivership proceeding or the Commissioner's possession, control, rights, title, and interest in the assets of the estate; the wasting of assets; and creditors from obtaining preferences and judgment against the estate or its assets. La. R.S. 22:2006. The Liquidator also has broad power to avoid preferences amongst creditors. See La. R.S. 22:2020-2023. Pertinent here, the RLCA expressly prohibits actions at law or equity brought against the insurer. Louisiana Revised Statutes 22:2028(D)(5)

---

[17] Louisiana Revised Statutes 22:2028 provides the procedure for the disposition of disputed claims, but must be read *in pari materia* with other sections of the RLCA. When the Receiver allows or disallows a claim in a lesser amount than claimed, he "shall" notify the person making the claim by letter or petition in the receivership proceedings and allow the claimant ten days after receipt of such notice in which to file an objection to the action of the Receiver. The objections "shall be heard" in the receivership proceeding "in a summary manner" and "by summary proceedings." La. R.S. 22:2028(D)(3) and (6). If a claim is deemed secured, then the "value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the [C]ommissioner of [I]nsurance by agreement, or by the court, and the amount of such value shall be credited upon the claims of such secured creditors and their claims allowed only for the balance." La. R.S. 22:2028(E). Secured claims may be satisfied by resorting to security. See La. R.S. 22:2042(D). In contrast, "[c]laims of creditors or policyholders who have received preferences voidable under R.S. 22:2020 or to whom conveyances or transfers, assignments or encumbrances have been made or given which are void under R.S. 22:2020, shall not be allowed unless such creditors or policyholders shall surrender such preferences, conveyances, transfers, assignments or encumbrances." La. R.S. 22:2028(F). Allowed, unsecured claims are paid in accordance with to the priorities of distribution of general assets from the insurer's estate, as set forth in La. R.S. 22:2025: (1) the Commissioner's costs and expenses, and LIGA's expenses; (2) policyholders' claims; (3) claims of the federal government; (4) employee compensation; (5) general creditor claims and claims under nonassessable policies; and (6) all other claims.

provides: "[u]pon the issuance of an order appointing a receiver of a domestic insurer or of an alien insurer, no action at law or equity shall be brought against the insurer, its insureds, or the receiver, whether in this state or elsewhere, nor shall any such existing actions be maintained or further presented after issuance of such an order."

## DISCUSSION

### The Bank's Reconventional Demand against the AIC Companies and Third Party Demand against the AIC Subsidiaries

Here, the Receiver excepted to the Bank's incidental demands—its reconventional demand against the AIC companies; third-party demand against the AIC subsidiaries; and cross claims against the D&O defendants—arguing that under the RLCA and the district court's Liquidation Order, the Bank was expressly prohibited from filing incidental demands against the insured, its subsidiaries, the D&O defendants, and their insurers. The Receiver contended that the Bank must present its claims through the RLCA's proof-of-claim process, which exclusively governs the rights of creditors to the assets of insolvent insurers.

In its reconventional demand against the AIC companies and third party demand against the AIC subsidiaries, the Bank asserts causes of action for a declaratory judgment of its status and rights as a secured creditor; breach of contract; indemnification; negligent misrepresentation; detrimental reliance and estoppel; and in the alternative, unjust enrichment. The Bank prayed for a declaratory judgment; a monetary judgment for the full amount of the loan; compensatory damages; litigation costs; indemnification; judicial interest; attorney's fees; and any and all equitable relief to which the Bank may be entitled.

As stated above, La. R.S. 22:2028(D)(5) provides that "[u]pon the *issuance of an order appointing a receiver* of a domestic insurer or of an alien insurer, *no action at law or equity shall be brought against the insurer*, its insureds, or the receiver, whether in this state or elsewhere, nor shall any such existing actions be maintained

or further presented after issuance of such an order." (Emphasis added). An *action at law* is defined as "[a] civil lawsuit stating a legal claim and seeking only a legal remedy." "ACTION," **Black's Law Dictionary** (12th ed. 2024). An *action*, or *suit*, *in equity* is defined as "[a] civil suit stating an equitable claim and asking for an exclusively equitable remedy." "SUIT," **Black's Law Dictionary** (12th ed. 2024). Pursuant to La. R.S. 22:2003(4), an "insurer" is defined under the RLCA as "any person who has done, purports to do, is doing, or is licensed to do an insurance business, and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization, administrative supervision, or conservation by, any commissioner of insurance[.]" Louisiana Revised Statutes 22:2004(4) further provides that "[f]or purposes of [the RLCA], any other persons included under R.S. 22:2002 shall be deemed to be insurers." As set forth in La. R.S. 22:2002(4), the RLCA applies to "[p]roducers, insurers, or any person or persons acting as an agent or a managing general agent of an insurer, any reinsurer, any holding company owning an insurer or any captive premium finance company, or any related entity, whether or not such persons are licensed to do an insurance business in this state."

Here, the two Rehabilitation Orders and the Liquidation Order appointed Mr. Bostick as Receiver of the AIC companies, thus triggering the remaining provisions of La. R.S. 22:2028(D)(5). In its reconventional demand, the Bank raised the legal claims listed above and sought legal remedies, in addition to "all equitable relief to which the Bank may be entitled," thereby bringing an "action at law or equity." The two Rehabilitation Orders decree that each of the AIC companies are "deemed insurers as defined by Louisiana law." According the alleged facts and the exhibits attached to the Bank's incidental demand, the AIC subsidiaries are each within the AHC holding company system, owned wholly by AHC—either directly or indirectly through AHC's total ownership of one of the other AIC subsidiaries. Therefore, the AIC subsidiaries are assets of the AIC companies' estate, which is under the

ownership and control of the Liquidator and Receiver. Based on these facts, which are accepted as true, it is clear that the AIC subsidiaries are "related" to AHC, their holding company, and are therefore "related entities" under La. R.S. 22:2002(4). As a "related entity," each of the AIC subsidiaries is deemed an "insurer" for purposes of the RLCA. La. R.S. 22:2002(4), 22:2003(4), 22:2004(4). Based on the plain language of La. R.S. 22:2028(D)(5), which prohibits actions at law or equity against insurers, the RLCA does not afford the Bank a remedy on the facts alleged in its incidental demand against the AIC companies or the AIC subsidiaries.

It is clear that through the enactment of the RLCA, the Legislature intended that creditors of insolvent insurance companies are required to assert their claims exclusively through the proof-of-claim process. This is evidenced by the Legislature's enactment of La. R.S. 22:2028(D)(4), which provides that should a judgment be rendered against an insurer after the commencement of receivership proceedings, the judgment shall not be considered as evidence of liability or damages by the district court. Furthermore, La R.S. 22:2043 provides that judgment creditors are prohibited from executing on money judgments obtained against an insolvent insurer during the pendency of receivership proceedings. Additionally, La. R.S. 22:2006 authorizes the district court to issue any injunction deemed necessary to prevent interference with the receivership proceeding, with the Receiver's possession and control of the estate's assets, and to prevent the obtaining of preferences, judgments, or liens against the estate's assets while in the Receiver's possession. Pursuant to that authority in La. R.S. 22:2006, the district court's Liquidation Order decreed that "all persons having … any … claims or demands against [the AIC companies], their property[,] or assets, shall present their claims to the Receiver … by way of a properly completed proof of claim." The district court ordered "that all individuals and entities are enjoined and stayed from obtaining preferences, judgment, attachments, or other like liens … against [the AIC

18

companies], their property, or assets until further order of this [c]ourt." The Liquidation Order further decreed "that all individuals and entities are enjoined from instituting or taking further action in any suit or proceeding, and from pursuing, obtaining[,] or executing a judgment, against [the AIC] companies, their property, or assets, the … Liquidator… , and/or the Receiver[.]" These injunctions remain in effect and mirror La. R.S. 22:2028(D)(5)—the Bank is prohibited from seeking, obtaining, or executing any preference or judgment, or taking any action in any suit or proceeding against the AIC companies and their property and assets—the AIC subsidiaries.

We also note that the prohibition against the Bank's incidental demands under the RLCA does not deprive the Bank of due process. The remedy for the Bank is to assert its incidental demands by filing an amended proof-of-claim, as ordered by the district court in its October 23, 2023 judgment. Once submitted, the Receiver will process the amended-proof-of-claim, which will be adjudicated equitably as all other timely-filed claims in this receivership proceeding. To allow the Bank to pursue its incidental demands outside the proof-of-claim process would create a preference over similarly-situated creditors whose claims are also pending in the receivership proceeding. Although the Bank's incidental demands were asserted in response to the Receiver's reconventional demand, the Bank's incidental demands are nonetheless an "action at law or equity" expressly prohibited by the RLCA and the Liquidation Order. The Bank can, and has, filed a proof-of-claim and asserted available defenses in response to the Receiver's reconventional demand to show its legal entitlement to the funds in dispute. A reversal of the district court's decision sustaining the no cause of action exception could potentially result in the Bank being paid the balance of the MSLP loan, $6.25 million, before the AIC policyholders, which would result in a subversion of the purpose of the RLCA—regulating insolvent insurance companies and protecting the interests of policyholders,

19

creditors, and the public. See La. R.S. 22:2005; **Donelon v. Shilling**, 340 So.3d at 791. For these reasons, we find that the district court did not err in sustaining the Receiver's peremptory exception raising the objection of no cause of action as to the Bank's reconventional demand against the AIC companies and the AIC subsidiaries.

### *The Bank's Cross Claim against the D&O Defendants and their Insurers*

In its cross claim against the D&O defendants, the Bank asserts causes of action for negligent misrepresentation; detrimental reliance and estoppel; and in the alternative, unjust enrichment. Against their insurers, the Bank asserts a cause of action under Louisiana's Direct Action Statute, La. R.S. 22:1269.

Pursuant to La. R.S. 22:2008(A), "[t]he commissioner of insurance … shall be vested by operation of law with the title to all property, contracts, and *rights of action of the insurer* as of the date of the order directing rehabilitation or liquidation." (Emphasis added). As Liquidator, the Commissioner is the proper party to sue to enforce any right of an insurer in liquidation. La. C.C.P. art. 693. The Bank's allegations against the D&O defendants involve their actions undertaken in their corporate capacities as officers and/or directors of one or more of the AIC companies. Actions against former officers and directors of the insolvent insurer are typical claims that liquidators bring against third parties to recover assets of the estate. See, *e.g.*, **Donelon v. Shilling**, 340 So.3d at 789. Because of the comprehensiveness and exclusivity of the RLCA, there is no provision in the RLCA for individual creditors to assert any causes of action that are vested by law in the Commissioner. To allow individual claims by creditors would violate the exclusivity of the RLCA and usurp the Commissioner's role therein. See **Bernard v. Fireside Commercial Life Insurance Co.**, 633 So.2d 177, 185 (La. App. 1 Cir. 1993), writ denied, 634 So.2d 839 (La. 1994).

Furthermore, the Bank cannot attempt to reduce its liability in the Receiver's reconventional demand "under a theory of estoppel, comparative fault, intervening

20

cause, proximate cause, reliance, mitigation of damages, or otherwise" by asserting the "prior wrongful or negligent actions" of the D&O defendants as a defense to the Receiver's claims. La. R.S. 22:2043.1.

Based on the RLCA, any claims against the D&O defendants to recover damages for their actions undertaken in their corporate capacities as officers and/or directors of one or more of the AIC companies are exclusively within the purview of the Commissioner, as Liquidator, through the Receiver. See La. R.S. 22:2008(A). There is no provision in the RLCA for individual creditors, such as the Bank, to assert any causes of action that are vested by law in the Commissioner. See **Bernard**, 633 So.2d at 185. Any damages caused by the actions of the D&O defendants belong to the AIC companies' estate, and any recovery therefrom through the proof-of-claims process will be paid out in accordance with La. R.S. 22:2025. For these reasons, we find that the district court did not err in sustaining the Receiver's peremptory exception raising the objection of no cause of action as to the Bank's cross claim against the D&O defendants.

Unable to assert a cause of action against the D&O defendants, we likewise find that the Bank cannot assert a cause of action against their insurers. The district court similarly did not err in sustaining the Receiver's peremptory exception raising the objection of no cause of action as to the Bank's cross claim against the insurers of the D&O defendants.

### DECREE

Based on the foregoing, we affirm the district court's October 23, 2023 judgment. All costs of this appeal are assessed to the appellant, Cadence Bank.

**AFFIRMED.**